[Civ. No. 37892. First Dist., Div. Four. Mar. 29, 1977.]

In re the Marriage of RENEE L. and STANLEY H. JUDD.
STANLEY H. JUDD, Appellant, v.
RENEE L. JUDD, Appellant.

516

## COUNSEL

Jerome Marks for Appellant Husband.

Belzer & Jackl and V. James Jackl for Appellant Wife.

## OPINION

**EMERSON, J.\***—In this action for dissolution of marriage, both Stanley Judd and his wife Renee appeal from certain portions of the interlocutory judgment. Stanley also appeals from orders, contained in the judgment, fixing the amount of his arrearages in spousal support under a prior order of the court, and denying his motion to modify a previous order for support. We consider first Stanley's appeal from that part of the judgment which divides and awards the community property of the parties.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

STANLEY'S APPEAL

1. *The Annuity Plan*

One of the assets of the marriage was a retirement annuity plan, provided by Stanley's employer, Standard Oil Company (hereafter Standard). After 15 years of service, payments under the plan become 50 percent "vested." The vesting factor increases 5 percent for every additional year of employment, until the payments become 100 percent vested upon completion of 25 years of service. At the time of the separation of the parties, this annuity had vested to the extent of 55 percent.

The basic monthly annuity payment is calculated by a formula which takes into account the age at retirement, the final five-year earnings of the employee, the number of years of credited service, and the form in which the annuity is paid.

If the employee dies before retirement, his beneficiary is entitled to a refund of contributions made, plus interest. If the employment is terminated before retirement, the employee is entitled to either a refund of contributions plus interest, or if he has completed at least 15 years of service, annuity payments subject to the "vesting factor" described above.

The trial court found the plan to be a community asset and made the following declaration: "(a) The annuity plan with [Stanley's] employer, Standard Oil of California, is vested and each party is entitled to one-half of 60% of the annuity plan upon [Stanley's] retirement, with payments to be made as received by [Stanley]. No evidence of actuarial value was presented at hearing." In determining the community interest to be 60 percent of the entire annuity plan, the trial court apparently looked only at the percentage of the plan which was "vested" at the time of trial.[1] The court thus followed a theory which, for purposes of this opinion, we shall call the "vesting rule."

Stanley contends that because the plan was vested but not *matured* and because there are too many uncertainties in the plan itself, the court erred in awarding Renee a continuing percentage interest in the

[1]Both parties agree that the court erroneously used the date of trial rather than the date of separation as determinative of the community interest. (Civ. Code, § 5118.) The plan was only 55 percent vested at the date of separation.

annuities. Rather, Stanley urges, the case should be remanded with directions that the court award the entire plan to Stanley, and that Renee be given a cash award of one-half of the community interest in the plan, calculated upon the basis of either its actuarial value or the total amount of contributions plus interest, at the time of separation. Renee urges this court to modify the order and decree that the community interest in the plan is the ratio of the number of months of community service in proportion to the total number of months served. We shall refer to this theory of division of the plan as the "time rule."

We dispose first of Stanley's contention that it would have been "clearly preferable" for the court to have awarded Renee a cash amount in lieu of a continuing interest in the annuities. This assertion is based on the claim that Stanley's right to receive the annuities has not yet "matured" and is subject to contingencies that may destroy these rights before they mature. ▮▮▮ But the fact that the employee's contractual right to receive benefits may be contingent upon future events does not alter its status as a property right. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 844 [126 Cal.Rptr. 633, 544 P.2d 561].) In *Brown,* the court recognized that a trial court must take into account the possibility that future events may destroy pension rights before they mature. (*Id.,* at p. 848.) However, it also noted that such uncertainties may be taken care of by awarding each spouse "an appropriate portion of each pension payment as it is paid." (*Id.,* at p. 848.) This is exactly what the trial court below did. Thus the immature character of Stanley's pension rights did not deprive the court of its power to divide the community interest in the plan by allowing Renee a continuing participation in it. We note further that in *Brown,* the Supreme Court also stated "[o]ur suggestion in *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32, 46 [89 Cal.Rptr. 61, 473 P.2d 765], that when feasible the trial court should award the employee all pension rights and compensate his spouse with other property of equal value, was not intended to tie the hands of the trial court. That court retains the discretion to divide the community assets in any fashion which complies with the provisions of Civil Code section 4800." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 848, fn. 10.) Therefore the issue is not whether an alternative division was preferable, but whether the court below abused its discretion by dividing the pension in the manner it did.

▮▮▮ We are of the opinion that the "vesting rule" is no longer the proper standard to be applied in the division of the community interest in retirement benefits. The trial court may well have considered the case

of *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449] (cert. den., 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41]), which it cited in its memorandum. That case held that "[t]he law is settled in California that retirement benefits which flow from the employment relationship, *to the extent they have vested,* are community property subject to equal division between the spouses. . . ." (*Id.,* at p. 596, fn. omitted, italics added.) From this statement, a trial court could quite logically conclude that the percentage of community interest in the retirement benefits equalled the percentage vested during marriage.

However, subsequent to the trial court's decision, the law on this subject changed with the ruling in *In re Marriage of Brown, supra,* 15 Cal.3d 838.[2] In *Brown,* the court overruled its decision in *French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366], that pension rights, to the extent they are nonvested, cannot constitute community property. (*Id.,* at p. 851.) The conclusion was reached "that the husband's pension rights, a contingent interest, whether vested or not vested, comprise a property interest of the community and that the wife may properly share in it." (15 Cal.3d 838, 852.)

*Brown* has therefore established that the extent to which the husband's benefits are "vested" is no longer the touchstone for determining the community interest in it. Instead, the court has held, "the joint effort that composes the community and the respective contributions of the spouses that make up its assets, are the meaningful criteria." (*In re Marriage of Brown, supra,* at p. 851.)

Although the extent to which benefits have vested during the marriage may at first glance appear to constitute a valid measure of the community's contribution toward the sum total of retirement assets, further reflection reveals that such is not the case.

For example, suppose Stanley were to retire on the date of separation. It is obvious that 100 percent of the retirement assets have been the result of community effort, yet only 55 percent of the basic annuity payment has "vested." Or suppose Stanley were to retire two years beyond the date of separation. Stanley would then have 18 years of completed service and only 65 percent of the plan would be "vested," yet 88.8 percent of Stanley's services (16 of the 18 years) would have been the result of community effort.

---

[2]The holding in *Brown* was made retroactive to any case in which property rights arising from the marriage, even if adjudicated, are "still subject to appellate review." (*Id.,* at p. 851.) It is therefore applicable herein.

The *Brown* decision has mandated that the community's share of retirement benefits are to reflect the extent of community effort in earning the contractual right to receive those benefits. (*Id.,* at pp. 851-852.) From the foregoing it is clear that the percentage of the plan which happened to have vested during the marriage is not necessarily reflective of the community's contribution toward the earning of Stanley's retirement benefits.

■ It follows, therefore, that the "vesting rule" adopted by the trial court, is unreasonable as applied to the facts of this case. While the court will be at liberty to apply any other standard which complies with Civil Code section 4800 (*In re Marriage of Brown, supra,* at p. 848, fn. 10), we suggest that, on remand, it adjudge that Renee's continuing interest in the annuity payments is equivalent to one-half of that portion of Stanley's services attributable to community effort.

■ The most effective method of accomplishing the above result would be to determine the community interest to be that fraction of retirement assets, the numerator of which represents the length of service during the marriage but before the separation, and the denominator of which represents the total length of service by the employee-spouse. Such disposition would comport with what we have termed the "time rule." (See *In re Marriage of Adams* (1976) 64 Cal.App.3d 181, 186 [134 Cal.Rptr. 298].)

This method of ascertaining the community interest in a spouse's retirement benefits has been approved not only by pre-*Brown* decisions dealing with vested pension rights (*In re Marriage of Wilson* (1974) 10 Cal.3d 851, 855 [112 Cal.Rptr. 405, 519 P.2d 165]; *In re Marriage of Karlin* (1972) 24 Cal.App.3d 25, 29-30 [101 Cal.Rptr. 240]), but by post-*Brown* decisions under which the trial court retains jurisdiction to supervise payments as they are received. (*In re Marriage of Freiberg* (1976) 57 Cal.App.3d 304, 312 [127 Cal.Rptr. 792]; *In re Marriage of Anderson* (1976) 64 Cal.App.3d 36, 40 [134 Cal.Rptr. 252].) The reason why California courts have accepted this manner of division as properly implementive of the "equal division" requirement of Civil Code section 4800 is apparent: Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits. The relation between years of communi-

ty service to total years of service provides a fair gauge of that portion of retirement benefits attributable to community effort.

Stanley strenuously argues that since annuity payments are also based upon earnings prior to retirement, Stanley's years of service after separation and divorce will possess a "significantly greater dollar value" than his years served during the marriage. Since Stanley's post-separation years will be his "most significant earning years," it is urged that an award which gives equal weight to post-marital and premarital years of service is erroneous.

This argument has been rejected in *In re Marriage of Freiberg, supra,* 57 Cal.App.3d 304. There, the court recognized that husband and wife share the same qualitative interest in the husband's retirement rights (*id.,* at p. 310) and held that the fact that the plan of payment is reflective of an employee's subsequent salary increases cannot alter or diminish the stature of the community's interest in those rights. (*Id.,* at p. 311, citing *Waite* v. *Waite* (1972) 6 Cal.3d 461, 471 [99 Cal.Rptr. 325, 492 P.2d 13].) As counsel for Renee points out, an employee's contributions in the early years of employment during the marriage, even though based on a smaller salary, may actually be worth more than contributions during the post-separation years, due to the longer period of accumulated interest and investment income prior to the commencement of benefit payments. ■ We therefore agree with the court's holding in the recent case of *In re Marriage of Anderson, supra,* 64 Cal.App.3d 36, 39, that "the first few years of service (during the marriage) must be given just as much weight in computing total service as the last few years (after separation)."

■ In summary as to this point, we conclude that the trial court properly exercised its discretion in choosing to award Renee a future interest in Stanley's retirement plan rather than a cash amount based upon actuarial value or contributions. ■ However the court's assignment to the community of that percentage of the plan which had vested at the time of trial was not in compliance with the requirements of Civil Code section 4800, since such a percentage does not necessarily reflect that portion of Stanley's services attributable to community effort. The division of the interests of the parties in Stanley's retirement plan should be made in a manner which is representative of the community's contribution toward the earning of annuity benefits, as suggested above.

## 2. *The Order Refusing to Modify Spousal Support*

Stanley urges that the trial court, under the evidence before it, erred in refusing to modify the support order. He asserts that the order should have been reduced from $800 per month to an undisclosed lesser figure, and the modification should have been made retroactive to the date when Stanley first made a motion to modify (May 8, 1973).

█ It is well established that a trial court has wide latitude in determining the propriety of a modification of its support award. (*Werner* v. *Werner* (1953) 120 Cal.App.2d 248, 251-252 [260 P.2d 961].) Whether a modification is warranted depends on the facts and circumstances of each case and an appellate court will not interfere with the trial court's action unless, as a matter of law, a clear abuse of discretion is shown. (*Wise* v. *Wise* (1964) 228 Cal.App.2d 322, 327 [39 Cal.Rptr. 448]; *Dean* v. *Dean* (1963) 59 Cal.2d 655, 657 [31 Cal.Rptr. 64, 381 P.2d 944].)

Stanley presents a two-pronged basis for his contention that the court's refusal to modify constituted an abuse of discretion: First it is contended that the award was necessarily based on the assumption that Stanley was receiving some $200 per month in dividends and interest from Renee's separate properties when in fact that income was received by Renee. Second, Stanley concludes that the trial court's *prospective* support order of only $500 per month from the date of judgment implies that the $800 per month awarded prior to trial was excessive as a matter of law. Both assertions are without merit.

Stanley presents no evidence from the record which would indicate that the amount of the court's support award necessarily depended upon the assumption that Stanley was receiving $200 in supplemental interest and dividends from Renee's separate property. The court may have taken into consideration the fact that the parties' assets had an estimated value of $189,000 at the time the order was issued, the fact that living expenses were normally paid exclusively from Stanley's salary, or the fact that Renee's estimated expenses were higher than Stanley's. In short, there were a variety of circumstances which the court was required to take into consideration in making its initial temporary support order. (*Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249].) █ Nor does the fact that the court determined that Stanley should pay only $500 in spousal support upon entry of the interlocutory judgment warrant the inference that a temporary support order of a larger sum was an abuse of discretion. The trial judge might well have reasoned that once Renee was

awarded her share of the substantial community property assets, a support award as high as $800 per month was no longer necessary, since she now had the ability to utilize those assets for the production of income. Stanley's assertion that failure to retroactively modify the support award was an abuse of discretion, must be rejected.

### 3. *The Order Fixing Arrearages*

■ Stanley claims that the court erred in finding him $1,900 in arrears on spousal support payments. He does not deny that he paid $1,900 less than was ordered by the court, but claims that he is entitled to a credit for amounts received by Renee in dividends and interest from her separate property, which were not taken into account by the trial judge. This contention is thus intertwined with the previous one, in that both are premised upon the undemonstrated assumption that the trial court "must have" considered Stanley to have had some $200 per month more available to him for spousal support than he actually had.

Stanley's allegation that he should be given credit against the arrearage is essentially identical to his assertion that the support order was excessive; thus this contention must fall along with the last one. Stanley has made no showing from the record that the support order was crucially dependent upon an assumption by the trial court that Stanley was receiving the dividend and interest income from Renee's separate property. On the other hand, Stanley's own financial declarations reveal that his monthly net income increased by almost $300 per month from May 1973, when a motion to modify was first made, until time of trial, a factor which more than offsets the supposed $200 in "lost" monthly revenue. ■ The amount of funds which the supporting spouse has available to him is only one variable which the court takes into consideration in determining an appropriate monthly support figure. The trial court's discretion in this area is unquestioned and Stanley has not presented us with facts which would warrant the conclusion that this discretion was abused. (*Whitney* v. *Whitney* (1958) 164 Cal.App.2d 577, 581 [330 P.2d 947].)

### RENEE'S APPEAL

Among other assets of the parties are certain shares of Standard stock, acquired under an employees' stock plan in which Stanley participated. The plan provided both a member's account and a contingent stock

account. The member's account was awarded to Stanley, with Renee receiving credit for one-half of its cash value.

At the time of separation of the parties, there were 228 shares in the contingent account.[3] The trial court found that the contingent account was community property but, since it had not vested, it was a mere expectancy, and was not subject to division. The entire interest in the contingent account was awarded to Stanley. Renee appeals from this portion of the judgment.

■ The decision in *In re Marriage of Brown, supra,* has made it clear that a right to future employment benefits, whether subject to contingencies or not, is "a contractual right," "not an expectancy but a chose in action, a form of property" (15 Cal.3d at p. 845) and thus subject to division as part of the community assets. (*Id.,* at p. 847.) Therefore, it was error for the court to have awarded the entire interest in the contingent stock plan to Stanley alone. (*In re Marriage of Brown, supra,* at p. 843, fn. 4; *In re Marriage of Ames* (1976) 59 Cal.App.3d 234, 238 [130 Cal.Rptr. 435].)

Renee urges that this court modify the judgment rather than remand the case. As we have pointed out above, *In re Marriage of Brown* does not necessarily mandate a particular method of division of community property. We are of the opinion that the division, not only of the stock plan, but also of the annuity plan, should be made by the trial court upon consideration of all the factors and circumstances of the case.

The orders contained in the judgment, namely the order fixing the amount of Stanley's arrearages and the order denying his motion to modify the previous support order, are affirmed. The judgment, insofar as it provides for the division of the community assets of the parties, is reversed. The superior court is directed to enter a judgment consistent with the views expressed in this opinion and in the case of *In re Marriage of Brown, supra,* 15 Cal.3d 838. Renee will recover her costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied April 27, 1977, and the petition of appellant Husband for a hearing by the Supreme Court was denied May 26, 1977.

---

[3]The shares have since increased to 456 as the result of a stock split.