[Civ. No. 20642. Fourth Dist., Div. Two. Sept. 17, 1979.]

In re the Marriage of JOSEPHINE A. and DANIEL G. POPPE.
DANIEL G. POPPE, Appellant, v.
JOSEPHINE A. POPPE, Respondent.

**COUNSEL**

James F. Rees for Appellant.

James F. Leck for Respondent.

**OPINION**

**KAUFMAN, J.**—The marriage of the parties was dissolved by a final judgment on January 30, 1974, referring to and incorporating the provisions of an interlocutory judgment entered on November 9, 1973. Daniel G. Poppe (hereafter former husband) appeals from an order of the court dated September 18, 1978, denying his request that spousal support be decreased or terminated and granting the application of Josephine A. Poppe (former wife) for "modification" of the judgment by fixing her interest in the Naval Reserve pension being received by former husband on the basis of the "time rule" at one-half the fraction 27.25/31.50, the numerator being the number of years of reserve service during the marriage before separation and the denominator being the number of former husband's "qualifying" years of service, which amounts to $253.60 of the total of $592 per month presently being received.

*Naval Reserve Pension*

Former husband entered the Navy on July 1, 1937. He served on active duty from that date until July 13, 1946, at which time he became a member of the Naval Reserve. On February 23, 1946, the parties were married. The parties separated on June 16, 1973, and their marriage was

subsequently dissolved as previously indicated. After the separation of the parties former husband continued serving in the Naval Reserve until he retired on October 31, 1977. He commenced receiving pension payments on November 30, 1977.

Retirement benefits paid to Navy personnel retiring from active duty are based on the number of years served and the amount of the retiree's salary during active service. Contrastingly, the amount of the pension paid to Naval Reserve retirees is a percentage of the base pay for the rank achieved arrived at on the basis of the number of points accumulated by the retiree during his service in the Naval Reserve. Essentially one point is earned for each drill attended. For example, 14 or 15 points would be earned during the annual two weeks' training duty. For periods of active duty, one point is credited for each day. To be eligible for retirement a Naval reservist must have been credited with a minimum number of "qualifying" years of service, that is, years in which 50 or more points were earned. However, if the minimum "qualifying" years requirement is met, all points earned are counted in the calculation of the pension notwithstanding that in some years less than 50 points were earned.

Former husband retired with a total of 5,002 points of which more than 3,000 were earned during the period he was on active duty prior to the marriage. The number of points accumulated during the marriage was 1,632. The balance of former husband's points were earned by him for his participation in the Naval Reserve after the separation of the parties. It was former husband's contention in the trial court that former wife's interest in the pension should be computed by multiplying one-half times the fraction 1632/5002 times the amount of the pension, $592 per month. Apportioning the pension in that fashion, former wife's share would amount to approximately $95.50 per month, and former husband had been paying that sum to former wife. However, the trial court determined that former husband's "qualifying" years totaled 31.50 and apportioned the pension on the basis of the "time rule" by dividing the 27.25 years between marriage and separation by the 31.5 "qualifying" years so that former wife's share amounts to $253.60 per month.[1]

■ Former husband first contends that the Naval Reserve pension was divided by the court in the interlocutory judgment of dissolution in

---

[1]Former husband contends that even if the trial court's apportionment were otherwise correct, the denominator should have been the full 36 or 37 years he was in the service. Since we conclude the basis for apportionment employed by the court was inappropriate, we do not reach this question.

accordance with his point ratio theory, that that determination has long since become final and that the trial court lacked jurisdiction to alter the division long since and finally made. Not so.

In numbered paragraph 4 of the interlocutory judgment the court purported to divide the community property. It dealt with items "a" through "e," none of which was the Naval Reserve retirement benefits. Numbered paragraph 5 read: "The COURT FURTHER ORDERS that respondent [former wife] has a right to apply for and obtain one half of petitioner's [former husband's] military pension benefits accrued between February 23, 1946 and June 16, 1973 when petitioner [former husband] is eligible to obtain said benefits."

Former husband contends that the court's intention to divide the retirement benefits in accordance with former husband's ratio theory is evident from a dialogue between the court and former husband near the conclusion of the dissolution hearing in which the court stated to former husband: "What you accumulated by points toward your pension prior to the time of marriage is a hundred percent your separate property." We cannot agree.

During the same dialogue the court stated, apparently to former wife: "Once he [former husband] applies and once he gets it [the pension], then you're going to get an appropriate amount *based on the number of years to the date of separation that you were married to him.* You are entitled to one-half as a community vested property interest as of that time." (Italics added.) We think it rather clear from the entire statement of the court[2]

[2]The dialogue in its entirety reads: "Now on this Naval time the Court has to order that at such time as you reach 60 or at such time as you apply—Mrs. Poppe, if this man never applies for Naval retirement, you never get it. I can't be more clear. You never get it if he never applies. All right. Because that's within his power and control. All right. Once he applies and once he gets it, then you're going to get an appropriate amount based on the number of years to the date of separation that you were married to him. You are entitled to one-half as a community vested property interest as of that time.

"Now Mr. Poppe, you continue on with Naval service. Everything hereafter you get full credit; it's all yours. So, he'll be getting more than you get, but the Court will order that you pay that proportionate [share] at such time as you apply. And when you receive it and upon receipt, then that proportionate share you're going to have to pay over to your wife, this wife, Mrs. Poppe.

"MR. POPPE: I have a question. In figuring out the pension, it's based on points that you accumulate for the 25 year period.

"THE COURT: That's right.

"MR. POPPE: And so would this start when the marriage started and stop when the marriage separated?

"THE COURT: It starts—

"MR. POPPE: Anything before that, would that count?

taken together with the format and language of the interlocutory judgment that what the court did and intended to do was to adjudicate that the community property interest in the retirement benefits was that accruing between February 23, 1946, and June 16, 1973, that former wife was entitled to one-half of such community property interest if and when former husband should become eligible for and apply for the pension and that jurisdiction was reserved to permit the court to make an order for an "appropriate amount" out of the pension to be paid to former wife if and when pension payments should materialize. Our conclusion in this regard is confirmed by the fact that, so far as appears, no evidence was introduced at the dissolution trial as to how Naval Reserve retirement benefits were calculated and no mention of the point system was made at the hearing other than former husband's query to the court near the conclusion of the hearing (see fn. 2, *ante*). Further, had the court intended finally to divide the retirement benefits at the time of the dissolution its use of the language that former wife "has a right to apply for and obtain" her portion of the benefits would be rendered most inappropriate.

Thus, wife's application for a "modification" of the judgment of dissolution was in reality a request to the court to exercise its reserved jurisdiction to make an order specifying the proportion and amount of her interest in the Naval Reserve pension. The court having reserved jurisdiction by its order that former wife would have in the future the "right to apply for and obtain" her share of the pension, the court was not precluded from entertaining former wife's application and making an order quantifying her interest.

Next former husband contends that the trial court's apportionment of the pension was legally erroneous. ■ Alternatively he argues that the federal statute basing Naval Reserve pensions on a point system is preemptive of any state law that would apportion it upon dissolution of marriage on another basis or that apportionment on the basis of the "time rule" was arbitrary and unreasonable and constituted an abuse of judicial discretion. Former husband cites no relevant authority in support of his

"THE COURT: Were you in the service before you married?

"MR. POPPE: Yes, sir.

"THE COURT: And you have credit for that?

"MR. POPPE: Yes, sir.

"THE COURT: Then that's all yours. That's the reason you have to figure it out. That's another item counsel is going to have to figure out. When you prepare the decree, you figure it out. What you accumulated by points toward your pension prior to the time of marriage is a hundred percent your separate property. It's only from the date of marriage that the wife has one-half interest in that. And then from the time of separation, not divorce but separation, then that ends. All right. Is there any item now of property that the Court has not disposed of?"

federal preemption argument, and we reject it. (Cf. *Gorman* v. *Gorman,* 90 Cal.App.3d 454, 460-462 [153 Cal.Rptr. 479].) ■ However, we agree that the apportionment made by the trial court was erroneous because the basis upon which the apportionment was made, years of service during the marriage before separation compared to "qualifying" years in service, bears no substantial rational relationship to the amount of the pension.

Former wife asserts that the "time rule" is the normal basis for apportioning retirement benefits earned in part during coverture and was appropriately employed by the court in the case at bench. Although the "time rule" is not the only acceptable method for apportioning retirement benefits between the community and separate estates (see *In re Marriage of Adams,* 64 Cal.App.3d 181, 186, fn. 6, 187, fn. 8 [134 Cal.Rptr. 298]), it is apparently the method most frequently employed. (See, e.g., *In re Marriage of Judd,* 68 Cal.App.3d 515, 522 [137 Cal.Rptr. 318]; *In re Marriage of Adams, supra,* 64 Cal.App.3d at pp. 181, 184 et seq; *In re Marriage of Anderson,* 64 Cal.App.3d 36, 39-40 [134 Cal.Rptr. 252]; *In re Marriage of Freiberg,* 57 Cal.App.3d 304, 310 [127 Cal.Rptr. 792].)

However, apportionment on the basis of the "time rule" is appropriate only where the amount of the retirement benefits is substantially related to the number of years of service. The rule and its rationale were aptly stated in *In re Marriage of Judd, supra,* 68 Cal.App.3d at pages 522-523: "The most effective method of accomplishing the above result would be to determine the community interest to be that fraction of retirement assets, the numerator of which represents the length of service during the marriage but before the separation, and the denominator of which represents the total length of service by the employee-spouse. Such disposition would comport with what we have termed the 'time rule.' [Citation.] [¶] . . . The reason why California courts have accepted this manner of division as properly implementive of the 'equal division' requirement of Civil Code section 4800 is apparent: *Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received* by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits. *The relation between years of community service to total years of service provides a fair gauge of that portion of retirement benefits attributable to community effort."* (Italics added.) Thus it is that in each and all of the cited cases the amount to be received in retirement benefits depended upon or was substantially

related to the number of years of service rendered. (See *In re Marriage of Judd, supra,* 68 Cal.App.3d at pp. 519, 522-523; *In re Marriage of Adams, supra,* 64 Cal.App.3d at p. 186; *In re Marriage of Anderson, supra,* 64 Cal.App.3d at p. 39; *In re Marriage of Freiberg, supra,* 57 Cal.App.3d at p. 308.)

In the case at bench the amount of former husband's pension is not substantially related to the number of years he served in the Naval Reserve. The only relationship between the number of years of service and the pension is that to be eligible for the pension former husband must have served a minimum number of "qualifying" years, years in which he earned 50 or more points. That condition having been satisfied, all points earned, whether in a "qualifying" year or not, counted in fixing the amount of his pension. The number of points that can be earned in a year may be as high as 364 or as low as 1, depending on the nature and frequency of the service rendered, not the number of years served. Thus the amount of the pension is not a function of the number of years of service; the number of years of service during the marriage is not a fair gauge of the community contribution; and the court's apportionment of the pension on the basis of the number of "qualifying" years served as compared to the number of years of service during the marriage must be said to be unreasonable, arbitrary and an abuse of discretion.

The argument that without the reserve service during the marriage no pension at all would be received is correct, but it is of no significant help in resolving the problem. There would likewise be no pension but for former husband's service before the marriage and after the separation of the parties. To the extent service during the marriage contributed to former husband's rank and thus increased his base pay, former wife has no cause for complaint. The pension is based on the increased base pay, and she thus receives the benefit of the increased base pay. Indeed, she receives the benefit also of any increase in base pay resulting from former husband's reserve service after separation of the parties.

*Spousal Support*

The spousal support order made at the time of the dissolution required former husband to pay to former wife $200 per month for one year, thereafter $150 per month for one year and thereafter $100 a month until further order of the court. At that time former wife was unemployed, and the court indicated to her that one reason it was making the stepdown order was to give her incentive to find employment.

Subsequently she did find employment and on May 7, 1974, former husband filed an order to show cause re modification in which he sought the termination of support. After hearing the court ordered the amount of the monthly payment reduced from $150 to $100 one year in advance of the time table set forth in the original order.

The instant proceedings were commenced by former husband's filing another order to show cause re modification for the termination of spousal support. This time his request for termination was based on the fact that the daughter of the parties born December 9, 1957, had married and moved from the residence which she had shared with former wife up to that time.

Former husband points out that at the hearing former wife admitted in her testimony that her expenses would be somewhat reduced because of the daughter's marriage and departure from the residence they shared. Former husband concludes that a change of circumstances was shown, and the trial court abused its discretion in declining to reduce the amount of or terminate spousal support. Not so.

In the first place, former husband's premise that a change of circumstances was shown does not support his conclusion that a modification or termination of spousal support was thereby required. A modification of spousal support cannot be granted in the absence of proof of a change in circumstances. However, the converse is not true; a showing of changed circumstances does not necessarily mandate a modification of spousal support.

In any event, there is no showing whatever that the trial court abused its discretion in requiring former husband to continue to pay spousal support in the amount of $100 per month. Former wife is employed, but her gross earnings approximate $692 per month. In addition her financial declaration disclosed income of $100 per month in public assistance and $95.33 per month paid to her by former husband on account of her interest in the Naval Reserve pension. She thus had gross income of $887.33 per month and a monthly net of $714.53. Her listed monthly expenses, which appear to be quite modest, amounted to $816 per month, $102 per month in excess of her net earnings. By contrast, husband's net monthly income was declared by him to be $1,572 per month, and his monthly expenses were listed as $1,355 per month. Thus, by his own figures former husband's net income exceeded his expenses by more than $200 per month. The duration of the marriage was in excess of

27 years, and former wife is entitled to maintain a standard of living not substantially different from that of former husband, especially when former husband's own figures indicate that he is well able to pay the required support.

The court acted with propriety in declining to modify the amount of spousal support.

Having concluded that the apportionment of the Naval Reserve pension made by the trial court is erroneous, the question remains what disposition to make. ■ The requirement is that the apportionment of retirement benefits between the separate and community property estates must be reasonable and fairly representative of the relative contributions of the community and separate estates. (See *In re Marriage of Judd, supra,* 68 Cal.App.3d at pp. 522-523; *In re Marriage of Adams, supra,* 64 Cal.App.3d at p. 187; cf. *In re Marriage of Freiberg, supra,* 57 Cal.App.3d at p. 312.) The basis for apportionment, however, is a matter committed to the judicial discretion of the trial court. (See *In re Marriage of Judd, supra,* 68 Cal.App.3d at p. 522; *In re Marriage of Adams, supra;* cf. *In re Marriage of Freiberg, supra.*) The discretion to be exercised is that of the trial court, not a reviewing court. (See *In re Marriage of Judd, supra.*) Although it is fairly obvious that apportionment on the basis of points as urged by former husband would be appropriate, we would usurp the function of the trial court by modifying the judgment to apportion the retirement benefits on that basis.

Accordingly, the order is reversed insofar as it establishes former wife's interest in the Naval Reserve pension, with directions to the trial court to redetermine the respective interests in the pension in a manner and on a basis consistent with this opinion. In all other respects the order appealed from is affirmed. In the interests of justice former wife shall recover costs on appeal, but the parties shall bear their own respective attorney fees on appeal.

Tamura, Acting P. J., and McDaniel, J., concurred.