[Civ. No. 29138. Fourth Dist., Div. Two. Mar. 6, 1984.]

GLORIA ALICE BRAMET DOWNER, Plaintiff and Appellant, v.
GEORGE KEITH BRAMET et al., Defendants and Respondents.

COUNSEL

Matthew E. Hennes for Plaintiff and Appellant.

Lewitt, Hackman, Hoefflin, Shapiro & Herzog and Richard M. Hoefflin for Defendants and Respondents.

OPINION

KAUFMAN, J.—Plaintiff Gloria Alice Bramet Downer (hereinafter referred to as former wife) appeals from a judgment of nonsuit on her complaint for the determination of her rights in certain property and for fraud. She claims a community property interest in the proceeds of sale of a one-third interest in a ranch conveyed to her former husband George Keith Bramet by his employer after the parties separated. At the close of former wife's case, former husband moved for nonsuit.[1] The motion was granted and judgment entered accordingly.

### Facts

The parties were married in 1953, and separated in 1971. Former husband was an accountant and a tax expert. He worked for Chilcott Enterprises

---

[1] On a theory not clear from the record a jury trial had apparently been demanded and granted.

before, during and after the marriage, beginning in 1943. Chilcott Enterprises consisted of several businesses and corporations owned and operated by Edward Chilcott and his wife. Former husband was an officer of several of the corporations and acted as secretary-treasurer, accountant and record-keeper for all of the Chilcotts' operations. Mr. Chilcott considered former husband his "righthand man."

Chilcott Enterprises had no retirement program of any kind for its employees. According to former wife's testimony, sometime in the mid-1960's former husband told her that Mr. Chilcott was going to give to him and two other employees a ranch in Oregon in lieu of retirement benefits. Nothing further was thereafter said about the ranch.

The parties separated in November 1971. In December 1972, after some exchange of drafts between the parties and their counsel, a marital settlement agreement was executed. The agreement, which was later incorporated in the judgment of dissolution, provided that all income and earnings of former husband or former wife after March 4, 1972, should be the separate property of the acquirer and that each party released any claim to such earnings or after acquired property. However, the agreement also contained a warranty "that neither party is now possessed of any property of any kind or description whatsoever, other than the property specifically mentioned in this Agreement" and a provision reading: "If it shall hereafter be determined by a Court of competent jurisdiction that one party is now possessed of any community property not set forth herein . . . such party hereby covenants and agrees to pay to [the other on demand an amount equal to one-half of the then][2] or present fair market value of such property, whichever is greater."

In August 1972, before the parties executed the agreement, but after the March 4 date specified in the settlement agreement, the Chilcotts deeded the W-4 Ranch in Oregon to former husband and two other employees.[3] Former husband did not mention his interest in the ranch at the time he executed the settlement agreement in December 1972.

Former husband continued working for Chilcott Enterprises after the dissolution until he became disabled after suffering a stroke in 1976. In 1978,

---

[2]Former wife's previous attorney testified without contradiction that the language in brackets was inadvertently omitted from the final draft of the agreement.

[3]Apparently for the purpose of minimizing gift tax consequences, the transaction was cast in the form of a sale with an $18,000 cash down payment and a note and deed of trust in the amount of $254,000 calling for payments of $18,000 a year. However, the Chilcotts gave each of the three employees $6,000 for the down payment and were to give them annually an additional $6,000 each to make the annual trust deed payments.

the ranch was sold for over $1.35 million and former husband's interest in the sale proceeds was turned over to his conservator. This action was instituted in 1980 shortly after former wife learned of the conveyance of the ranch to former husband and the other employees.

Mr. Chilcott testified in essence that the conveyance to the three employees was a gift—the reason he deeded the ranch to the three employees was that he did not need the money and he just felt like giving it away.

Additional facts will be included in the discussion of the propriety of the nonsuit.

### Discussion of Contentions

Former wife contends the trial court erred in two particulars: it should not have granted the nonsuit, and it should have allowed her to introduce expert testimony as to whether the transfer of the ranch constituted a gift or deferred compensation. We discuss these contentions in inverse order.

*Expert Testimony*

Former wife twice attempted to introduce "expert testimony" on the issue whether the transfer of the ranch constituted deferred compensation or a gift. Initially, she proffered the testimony of her former attorney as to the components of an objective test to determine whether the transfer of the ranch was a gift or deferred compensation. The trial court ruled the testimony inadmissible. Later she attempted to elicit testimony from an independent attorney as an expert witness, again to delineate for the jury the standards to use in determining whether the transfer was a gift or deferred compensation. The court again excluded the proffered testimony.

In support of her argument the proffered testimony should have been received, former wife cites the general rule that opinion evidence which is otherwise admissible is not made inadmissible simply because it embraces the ultimate issue to be decided by the trier of fact. (Evid. Code, § 805.) The cited rule does not, however, authorize an "expert" to testify to legal conclusions in the guise of expert opinion. Such legal conclusions do not constitute substantial evidence. (Cf. *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967].) "The manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion. (*L. A. Teachers Union* v. *L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827].)" (*Ferreira* v. *Workmen's Comp. Appeals Bd.* (1974) 38 Cal.App.3d 120, 126 [112 Cal.Rptr. 232].)

While in many cases expert opinions that are genuinely needed may happen to embrace the ultimate issue of fact (e.g., a medical opinion whether a physician's actions constitute professional negligence), the calling of lawyers as "expert witnesses" to give opinions as to the application of the law to particular facts usurps the duty of the trial court to instruct the jury on the law as applicable to the facts, and results in no more than a modern day "trial by oath" in which the side producing the greater number of lawyers able to opine in their favor wins. (See Silving, *The Oath* (1959) 68 Yale L.J. 1329, 1362-1363.)

In any case, expert testimony is limited to those areas in which the subject is sufficiently beyond common experience that an expert opinion would assist the trier of fact. (Evid. Code, § 801.) ■ The determination of whether particular expert testimony will assist the jury or, instead, confuse it, is largely within the discretion of the trial court (see *People* v. *Cole* (1956) 47 Cal.2d 99, 105 [301 P.2d 854, 56 A.L.R.2d 1435]), and no abuse of discretion is shown here.

■ The trial court did not err in excluding the proffered expert testimony.

*The Nonsuit*

■ A nonsuit may be granted only when, " '. . . disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' " (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].) ■ The question is thus whether there was substantial evidence that would have supported a verdict in favor of former wife on the issue of her interest in the ranch (or, more correctly, the proceeds from the sale of the ranch).

Former wife contends there was substantial evidence the transfer of the ranch interest to former husband was in lieu of pension benefits, and is therefore community property. Former husband contends there is no substantial evidence the ranch constituted a retirement benefit and argues the transfer of the ranch interest was a gift, and thus, separate property pursuant to Civil Code section 5108.[4] The trial court agreed with former husband

---

[4]Civil Code section 5108 reads in pertinent part: "All property owned by the husband before marriage, and that acquired afterwards by *gift,* bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property." (Italics added.)

that the transfer of the interest in the ranch to him was a gift and concluded therefore that it was his separate property.

We agree with the trial court and former husband that the Chilcotts' transfer of a one-third interest in the ranch to former husband was legally in the form of a gift. Civil Code section 1146 defines a gift as "a transfer of personal property, made voluntarily, and without consideration." The evidence establishes that that is precisely what was done in the case at bench. There is no evidence the ranch was transferred pursuant to a legal obligation to do so on the part of the Chilcotts. There is no evidence of any bargained-for contractual obligation nor of any detrimental reliance by former husband sufficient to invoke the doctrine of promissory estoppel. There is nothing to show, for example, that former husband was induced to stay in the Chilcotts' employ by the statement assertedly made by Mr. Chilcott that the ranch was going to be conveyed to the three employees in lieu of a pension program. There being no evidence of any legal obligation to convey the ranch, its conveyance can only have been a gift.

However, the conclusion the conveyance was legally a gift does not resolve the ultimate question of the characterization of the ranch interest or the proceeds of its sale as community or separate. Although Civil Code section 5108 provides that property acquired by the husband after marriage by gift is his separate property, the language of section 5108 must be read in the context of the entire marital property scheme. Earnings or property attributable to or acquired as a result of the labor, skill and effort of a spouse during marriage are community property. (Civ. Code, § 5110; cf. Civ. Code, § 5118.) Even though the transfer of the ranch interest was legally a gift, there is substantial, indeed strong, evidence the gift was made by former husband's employer in recognition of former husband's devoted and skillful services during his lifelong employment at Chilcott Enterprises.

The evidence shows former husband began working for Chilcott Enterprises in 1943. He became Mr. Chilcott's righthand man, did all the accounting for the various Chilcott operations, was responsible for all the tax planning, advice, and filing of returns, handled sales contracts and record-keeping, served as officer in several of the corporate entities and supervised the ranch operations in California, Arizona and Oregon. For over 30 years, he was the Chilcotts' loyal and trusted employee. By contrast, there was no evidence of any social or personal relationship between former husband and the Chilcotts. The Bramets never went out socially with the Chilcotts, and former husband never played golf or other sports with Mr. Chilcott, never took a social trip, played cards or anything of that sort with the Chilcotts. The Bramets went to the Chilcotts' house once to attend the wedding of the Chilcotts' oldest daughter, and one time former husband took care of the

Chilcotts' home while they were away on vacation. Otherwise, former husband never went to the Chilcotts' home socially. Mr. Chilcott testified that, except for their business relationship, he had practically no contact with former husband.

Thus, although the conveyance of the ranch interest to former husband was in the form of a gift, the evidence would support, indeed strongly suggests, that it was in whole or part a remuneratory gift in recognition of former husband's loyal and skilled efforts for and services to his employer. (*Holby* v. *Holby* (1981) 131 Ariz. 113 [638 P.2d 1359, 1360]; de Funiak and Vaughn, Principles of Community Property (2d ed. 1971) § 70, pp. 157-160.) To the extent it was and to the extent the efforts and services were rendered during the marriage (see *In re Marriage of Poppe* (1979) 97 Cal.App.3d 1, 8-9 [158 Cal.Rptr. 500]; *In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 522-523 [137 Cal.Rptr. 318]), the ranch interest conveyed to former husband and the proceeds of its sale were community property. (*Holby* v. *Holby, supra,* 131 Ariz. 113 [638 P.2d 1359, 1360]; de Funiak and Vaughn, Principles of Community Property (2d ed. 1971) § 70, pp. 157-160.)

It was error therefore to grant the nonsuit as to the cause of action to establish former wife's interest in the proceeds of sale of the ranch interest.

■ We conclude, however, that the nonsuit was properly granted as to the count for fraud. The existence of actual damages is an essential element of a cause of action for damages for fraud. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 591, pp. 2230-2231, and cases cited.) Here, even assuming former husband's intentional concealment of the ranch interest at the time of execution of the marital settlement agreement, former wife has suffered no resulting injury. If the ranch interest is ultimately determined to have been community property in whole or part, former wife will be entitled to her share of the proceeds of sale; if it should finally be determined to have been entirely former husband's separate property, former wife was never entitled to any part of it and has not been damaged.

The nonsuit was thus proper as to the cause of action for fraud and the judgment will be affirmed as to that cause of action.

*Disposition*

The judgment of nonsuit is reversed as to the cause of action to establish plaintiff's interest in the proceeds of sale of the interest in the ranch prop-

erty; as to the cause of action for fraud the judgment is affirmed. Plaintiff shall recover costs on appeal.

Morris, P. J., and Rickles, J., concurred.

A petition for a rehearing was denied March 29, 1984, and respondents' petition for a hearing by the Supreme Court was denied May 2, 1984.