Filed 1/4/23; certified for publication 1/31/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Marriage of DARRELL P. and ANGELA M. BELTHIUS. | B315673 |
| | (Los Angeles County Super. Ct. No. VD023301) |
| DARRELL P. BELTHIUS, Respondent, v. ANGELA M. BELTHIUS, Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. A. Veronica Sauceda, Judge. Reversed and remanded with directions.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Baca for Appellant.

Law Offices of Gregory G. Yacoubian and Gregory G. Yacoubian for Respondent.

_____

In this marital dissolution case, appellant Angela M. Belthius (Angela) appeals from a postjudgment order denying her request for the entry of a qualified domestic relations order (QDRO) and instead adopting the QDRO proposed by respondent Darrell P. Belthius (Darrell).[1]  We reverse and remand with directions.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Marriage*

Angela and Darrell were married on September 14, 1985, and separated on September 1, 1995.

*Darrell's Employment*

On April 27, 1987, Darrell began working for the Los Angeles Police Department (LAPD).  He joined the Los Angeles Fire and Police Pension Plan on October 11, 1987.  During the parties' marriage, Darrell held the rank and paygrade of Police Officer I, Police Officer II, and Police Officer III.

*Stipulated Judgment of Dissolution*

A stipulated judgment of marital dissolution was entered on May 12, 1997 (stipulated judgment).  As relevant here, the stipulated judgment awarded Angela and Darrell each "[o]ne-half of the community interest in" Darrell's LAPD pension.

_____

[1]     For ease of identification, we refer to the parties by their first names.  No disrespect is intended.

2

The stipulated judgment also provided: "The parties stipulate and the Court orders that [Darrell's LAPD pension] . . . shall be divided pursuant to the 'time rule' formula"—citing, *In re Marriage of Judd* (1977) 68 Cal.App.3d 515 (*Judd*) and *In re Marriage of Henkle* (1987) 189 Cal.App.3d 97—"by [QDRO]. The parties further stipulate and the Court orders that the parties will take action to join the pension to this action as a Claimant if necessary and that the Court shall reserve jurisdiction over the issue of the pension, and any [QDRO] necessary to divide the parties' interests."

*Darrell's Postseparation Employment*

Darrell continued to be employed by the LAPD after the parties separated until August 31, 2019. During that period, Darrell was successively promoted to and held the ranks and paygrades of Detective I, Detective II, Sergeant I, Sergeant II, Lieutenant I, and Lieutenant II.

*Angela's Request for Order*

On January 28, 2021, Angela filed a request for order seeking the entry of a proposed QDRO (Angela's QDRO).

As to the calculation of the community interest in Darrell's pension, Angela's QDRO provided: "[T]he community interest in [Darrell]'s entitlement to a service pension . . . shall be determined by dividing the years of service used in computing his[] service pension entitlement attributable to the period that [Darrell] was married to [Angela] before separation (Marital Service) by the total years of service used in computing [Darrell]'s service pension entitlement (Total Service); the resultant percentage then shall be multiplied by [Darrell]'s service pension entitlement, including any cost of living increases, to arrive at the community interest:

3

"MARITAL SERVICE DIVIDED BY TOTAL SERVICE TIMES [DARRELL]'S SERVICE PENSION ENTITLEMENT EQUALS COMMUNITY INTEREST.

"All funds in [Darrell]'s [Deferred Retirement Option Plan (DROP)] account, if any, constitute . . . [Darrell]'s service pension entitlement and shall be divided according to the formula in this paragraph."

Angela's QDRO further provided: "[I]f [Angela]'s death occurs, [Angela]'s separate property interest established under this Order shall pass under [Angela]'s beneficiary designation on file with the Board or, if none, shall pass under [Angela]'s will or should [Angela] leave no will, shall pass by intestate succession."

*Darrell's Responsive Declaration*

Darrell filed a responsive declaration, indicating that he did not consent to Angela's requested QDRO. According to Darrell, during the divorce proceedings, he believed that Angela would be entitled to half of his pension contributions, plus interest, as calculated at the time of their separation.

Darrell stated: "I contributed 9% of my gross income every pay period to the pension fund for an additional 24 years after separation, which computes [to] several hundred thousands of dollars. [Angela] contributed zero. The pension payout is based upon years of service and final 12 months of income. Your income is the result of promotions and education. I incurred the costs, hard work and family hardships to receive a graduate level education while working full time and supporting my family. This education was required to obtain management level positions to obtain the higher pay and benefits. If I would have remained at the rank/position at the time of the separation, my

4

final pension settlement would have been a fraction of what was earned after the time of separation."

Darrell contended that Angela "should only be entitled to her accruals acquired on her half of the pension value at the time of the separation, not based upon [Darrell's] future earnings and contributions into the pension plan as the time rule formula outlines."

*Darrell's Proposed QDRO*

At the family court's direction, Darrell filed a memorandum of points and authorities and his own proposed QDRO (Darrell's QDRO).

Darrell's QDRO characterized the increase to his pension benefits "attributable to [Darrell]'s post-separation rank promotions" as his separate property. Regarding community property, it provided: "[T]he community interest in [Darrell]'s entitlement to a service pension . . . shall be determined by dividing the years of service used in computing his service pension entitlement that are attributable to the period that [Darrell] was married to [Angela] before separation (Marital Service) by the total years of service used in computing [Darrell]'s service pension entitlement (Total Service); the resultant percentage then shall be multiplied by the amount of [Darrell]'s service pension entitlement based upon [Darrell]'s rank of Police Officer III on the date of separation, September 1, 1995, including any cost-of-living increases, to arrive at the community interest therein, and . . . [Angela]'s Monthly Pension Benefit, as provided for in the Plan's 'Request for Estimate of Community Property Division of the Service Pension Benefit and Deferred Retirement Option Plan (DROP) Account' dated July 28, 2021, which is attached hereto as Exhibit-A. All funds included in . . . [Darrell]'s

5

DROP account will also be divided based on the foregoing analysis . . . ."

The referenced exhibit was a letter from the assistant manager of the City of Los Angeles's DROP/Service Pensions Section, dated July 28, 2021. It was sent in response to Darrell's "request for an estimate of [his] monthly service pension benefit and DROP account balance using the rank of Police Officer III . . . ." The letter cautioned that "a court filed and judged signed" QDRO was not on file and that "[a]ctual community property will be determined based on court signed documents."

Darrell's QDRO also provided that, if Angela predeceased Darrell, her interest in the pension would revert to Darrell.

*Family Court Order*

After entertaining oral argument on August 31, 2021, the family court denied Angela's request for order and instead signed Darrell's QDRO.

The family court stated: "[Y]ou both agreed that the time rule formula applies. So there is no dispute regarding that whether or not . . . [Angela]—as [Darrell] said, [would] gain a windfall, . . . because she will get an additional amount of his pension based on his promotion. And so . . . [Darrell] stated . . . that these promotions occurred post separation. . . . Whether there's a dispute, whether he spent his own money, or this is something that's provided by the police department, it doesn't matter. These promotions don't just happen. Someone has to work hard for them and merit testing, et cetera. And all these promotions happened post separation. And so I'm going to deny . . . [Angela]'s request. I'm going to sign . . . [Darrell]'s QDRO."

*Appeal*

Angela timely appealed from the family court's August 31, 2021, order.

## DISCUSSION

Angela contends that the family court erred in two respects when it signed Darrell's QDRO. First, the court erroneously used Darrell's rank and salary at the time of the parties' separation to calculate the community interest in Darrell's pension[2] instead of his final rank and salary at the time of his retirement, as required by the time rule. Second, the court committed legal error by ordering that Angela's property interest in the pension reverts to Darrell if she predeceases him.[3]

We agree with Angela on both points.

I. *Standard of Review*

With respect to the characterization of property as separate or community, "[i]nasmuch as the basic 'inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values,' the determination in question amounts to the resolution of a mixed question of law and fact that is predominantly one of law. [Citation.] As such, it is examined de novo. [Citation.]" (*In re Marriage of Lehman* (1998) 18 Cal.4th

---

[2] Darrell's pension includes the monthly pension benefit as well as the DROP account balance.

[3] Darrell argues that this issue should not be considered on appeal because Angela failed to raise it in the family court. We disagree. Angela's QDRO provided that, upon her death, her separate property interest in the pension would pass to her designated beneficiary, under her will, or by intestate succession. This was sufficient to preserve the issue for appeal.

169, 184 (*Lehman*).) This appeal also requires us to apply law to undisputed facts and to construe the terms of the stipulated judgment. We also do so de novo. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [application of law to undisputed facts]; *Estate of Jones* (2022) 82 Cal.App.5th 948, 952–953 (*Jones*) [interpretation of a stipulated judgment not involving extrinsic evidence].)[4]

## II. *Community Interest in Darrell's Pension*

### A. Applicable law

In general, all property acquired by spouses during marriage but before separation is considered community property. (*Lehman*, *supra*, 18 Cal.4th at p. 177.) This includes the property right to retirement benefits attributable to employment during marriage. (*Ibid.*)[5] "The right to retirement

---

[4] Darrell contends that we should apply the abuse of discretion standard of review. (See *In re Marriage of Adams* (1976) 64 Cal.App.3d 181, 187 [method selected to distribute the community interest in retirement rights reviewed for abuse of discretion].) Because we conclude that the family court committed legal error, the result would be the same regardless of the standard applied. (See *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746 ["when a trial court's decision rests on an error of law, that decision is an abuse of discretion"].)

[5] Under California law, retirement pension benefits "'do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee.' [Citation.] Since pension benefits represent a form of deferred compensation for services rendered [citation], the employee's right to such benefits is a contractual right, derived from the terms of the employment contract." (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 845.) "[A]n employee acquires a property right to pension benefits

8

benefits is a right to 'draw[] from [a] stream of income that . . . begins to flow' on retirement, as that stream is then defined. [Citations.] [¶] The stream's volume at retirement may depend on various events or conditions after separation and even after dissolution. [Citations.]" (*Id.* at pp. 177–178, fn. omitted.)

Upon dissolution of the marriage, the family court "must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone. [Citations.]" (*Lehman, supra*, 18 Cal.4th at p. 187.) The "time rule" is one such method of apportionment.

"Under the time rule, the community is allocated a fraction of the [pension] benefits, the numerator representing length of service during marriage but before separation, and the denominator representing the total length of service by the employee spouse. That ratio is then multiplied by the final plan benefit to determine the community interest. [Citations.]" (*In re Marriage of Gowan* (1997) 54 Cal.App.4th 80, 88 (*Gowan*).)

The *Judd* court explained the rationale underlying the time rule: "Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits. The relation between years of community service to total years of service provides a fair gauge of that portion of retirement benefits

when he enters upon the performance of his employment contract." (*Ibid.*)

9

attributable to community effort." (*Judd*, *supra*, 68 Cal.App.3d at pp. 522–523.)

"The rule thus divides the separate property and community property interests in a pension by giving equal weight to each year of service, regardless of whether the divorce occurred early in the employed spouse's career (when salary-based pension contribution deductions might be smaller but would have longer to grow) or closer to retirement (when salary-based pension contribution deductions might be greater but would have less time to grow)." (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 508 (*Gray*).)

B. <u>Analysis</u>

Darrell's QDRO signed by the family court calculates the community interest in Darrell's pension by dividing the length of employment service during marriage by the total length of service, and then multiplying that fraction by what Darrell's pension benefit hypothetically *would* have been if he had retired at the rank he held at the time of the parties' separation—that of a Police Officer III.[6]  Of course, Darrell did not retire as a Police Officer III, but rather as a Lieutenant II.  Thus, Darrell's QDRO does not comport with stipulated judgment's unambiguous provisions that the parties were each entitled to half of the

---

[6]    According to the July 28, 2021, letter from the City of Los Angeles's DROP/Service Pensions Section, Angela's monthly share of the pension would be $1,004.99 and her share of the DROP account would be $51,896.09 if calculated using the final average salary of a Police Officer III ($8,632.14), as Darrell's QDRO dictates.  Alternatively, Angela's monthly share of the pension would be $1,363.76 and her share of the DROP account would be $70,422.27 if calculated using the final average salary of a Lieutenant II ($11,713.68).

10

community interest in Darrell's pension and that the method of apportionment would be made pursuant to the time rule.

Under the traditional time rule, the fraction of service during marriage divided by total service must be "multiplied by *the final plan benefit* to determine the community interest. [Citations.]" (*Gowan*, *supra*, 54 Cal.App.4th at p. 88, italics added; see also *In re Marriage of Steinberger* (2001) 91 Cal.App.4th 1449, 1460 [multiplying "by the total benefit received"].) That is because the community property interest at issue—the right to retirement benefits—"is a right to draw from a stream of income that begins to flow, *and is defined, on retirement*. [Citations.]" (*Lehman*, *supra*, 18 Cal.4th at p. 183, italics added.)

"[E]ven though an employee spouse while married might have earned less in early career years than in the later prime of a career that might occur postseparation, the right to the ultimate benefit, at least in part, still accrued during the earlier marriage. This entitles the marital community to evenly share in the ultimate benefit based solely on the ratio of the duration of the marriage to the duration of the total employment service, regardless of the amount of the benefit specifically attributable to service or salary during the marital years or any breaks in service. [Citation.]" (*Gray*, *supra*, 155 Cal.App.4th at p. 516.)

Darrell does not dispute that the time rule governs the apportionment of the community interest in his pension. Rather, he contends that increases in his pension benefits "attributable solely to his promotions post separation, that were the result of his personal initiative . . . and separate property expenditures," are his separate property to which the time rule should not apply.

11

We cannot agree. Our intention is not to derogate Darrell's professional achievements, but he "errs in his claim that any post separation . . . promotion . . . derive[d] solely from his post-separation efforts." (*In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 675.) Rather, the promotions "stem[med] from an indivisible mixture of" effort and progress both during and after the marriage. (*Ibid.*) The community thus retained a property interest in the final pension benefits, as increased by post-separation promotions. That the value of the benefits at retirement "is reflective of an employee's subsequent [post-separation] salary increases cannot alter or diminish the stature of the community's interest in those rights. [Citations.]" (*Judd*, *supra*, 68 Cal.App.3d at p. 523.)

Darrell's QDRO deprives the community of its proper share of the pension benefits and must be reversed.

III. *Reversion of Angela's Interest to Darrell*

Darrell's QDRO, signed by the family court, provides that, if Angela predeceases Darrell, her separate property interest in the pension will revert to Darrell. This provision violates Family Code section 2610, subdivision (a), which provides, in relevant part, that "the court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits[.]"

Family Code section 2610 was enacted to abolish the terminable interest rule (*Regents of University of California v. Benford* (2005) 128 Cal.App.4th 867, 874), which had previously "governed disposition of community property interests in retirement benefits upon the death of either of the spouses in

12

dissolution proceedings" (*In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 634 (*Powers*)).  Under the terminable interest rule, "a nonemployee spouse's interest in pension benefits terminated on that person's death, so that the nonemployee spouse could not bequeath benefits by will.  [Citations.]"  (*In re Marriage of Nice* (1991) 230 Cal.App.3d 444, 451 (*Nice*).)

"[A]brogation of the terminable interest rule means that a nonemployee spouse's community property interest is now inheritable.  [Citation.]"  (*Nice, supra*, 230 Cal.App.3d at p. 452; see also *Powers, supra*, 218 Cal.App.3d at p. 639 ["if the nonemployee spouse dies before the employee spouse, his or her interest in the employee spouse's pension plan does not revert to the employee spouse by operation of the terminable interest rule but becomes part of the nonemployee spouse's estate"].)

By mandating that upon Angela's death her share of the pension would revert to Darrell, Darrell's QDRO effectively revives the terminable interest rule, contravening Family Code section 2610.  The provision cannot stand.

**DISPOSITION**

The August 31, 2021, order entering Darrell's QDRO is reversed. On remand, the family court is directed to enter a QDRO that (1) calculates the community interest in Darrell's pension by applying the time rule to the final pension benefits as those benefits were defined at retirement; and (2) complies with Family Code section 2610, subdivision (a), with respect to the disposition of Angela's share of the pension upon her death.

Angela is entitled to her costs on appeal.

_____, Acting P. J.
ASHMANN-GERST

We concur:

_____, J.
CHAVEZ

_____, J.
HOFFSTADT

14

Filed 1/31/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Marriage of DARRELL P. and ANGELA M. BELTHIUS. | B315673 |
| | (Los Angeles County Super. Ct. No. VD023301) |
| DARRELL P. BELTHIUS, | |
| Respondent, | |
| v. | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| ANGELA M. BELTHIUS, | |
| Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on January 4, 2023, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.