[No. H015061. Sixth Dist. Mar. 17, 1997.]

In re the Marriage of RAMONA HELEN and JAMES ROBERT GOWAN, JR.
RAMONA HELEN GOWAN, Respondent, v.
JAMES ROBERT GOWAN, JR., Appellant;
BECKMAN INSTRUMENTS, INC., PENSION PLAN, Respondent.

## COUNSEL

James Anthony Kelly for Appellant.

O'Melveny & Myers, Wayne S. Jacobsen, Larry A. Walraven, Dok, Levy & Perrin, William L. Dok, Hugh T. Thomson and George C. Demos for Respondents.

## OPINION

**COTTLE, P. J.**—After judgment in a marital dissolution action between James Robert Gowan, Jr., and his former wife, Ramona Helen Gowan, the trial court entered an order dividing the community property interest in James's pension plan. Because we find that the trial court had retained jurisdiction to divide the pension plan, and did not abuse its discretion in dividing the pension plan according to the "time rule," we affirm the order.

## I.  FACTS

James and Ramona were married in June 1957. On May 27, 1960, James began employment with Beckman Instruments, Inc. (Beckman). He was employed there continuously until January 11, 1974, when he left Beckman. At the time his employment terminated, James was earning approximately $30,000 per year.

On October 25, 1978, an interlocutory judgment was entered dissolving the parties' marriage. The interlocutory judgment was based upon a stipulation of the parties, and reflected the parties' agreement regarding support and property division. A final judgment of dissolution was filed on February 21, 1979.

In paragraph 9 of the 1978 interlocutory judgment, the parties agreed to the following: "[Ramona] shall have confirmed to herself as her sole and separate property an undivided one-half interest in any and all retirement benefits to which [James] may be entitled from Beckman Instruments Inc. of Fullerton, California. Said retirement benefits having all been earned by [James] during the course of this marriage, they are all . . . therefore community property. This court shall retain jurisdiction over the subject matter and [James] agrees to pay to [Ramona] as and when he receives said funds her one-half thereof forthwith."

At the time of this interlocutory judgment, the Beckman Instruments, Inc. Pension Plan (Beckman Pension Plan) was not joined in the proceedings. When James left Beckman in January 1974, it was anticipated that he would receive a monthly annuity in the amount of approximately $137.16 from the Beckman Pension Plan beginning on July 1, 1999.

On May 1, 1989, James was again hired by Beckman. His salary for this employment was more than $100,000 per year. James retired from Beckman on June 3, 1994.

For purposes of benefit accrual under the Beckman Pension Plan, both of James's employment periods (1960-1974 and 1989-1994) were added together for a total service credit of more than 18 years.[1] In June 1994, James filed a payment directive with the Beckman Pension Plan electing a single life monthly payment option with a Social Security adjustment.

After his retirement in 1994, James began receiving a monthly pension benefit in an initial amount over $3,400. As of March 1, 1996, when James

---

[1] In order to give James credit for his total service time, Beckman moved the initial hire date forward to September 27, 1975, which, according to Beckman, yielded the same total benefits service as adding the service from each employment period together.

would be entitled to Social Security benefits, his pension benefit was to be reduced to approximately $2,500 per month for the remainder of his life. James did not commence payments to Ramona once he began receiving monthly retirement benefits.

On July 28, 1995, Ramona filed a motion seeking enforcement of pension division, the entry of a qualified domestic relations order (QDRO), and attorneys' fees and costs. Before the matter was heard, Ramona also filed a request for joinder of the Beckman Pension Plan, which was granted on December 4, 1995, and a notice of adverse interest in the Beckman Pension Plan.

In her motion seeking enforcement of the pension division, Ramona argued that because James's pension benefit was based upon over 18 years of service, approximately 14 of which were during their marriage, 72.95 percent of the pension was community property, and she was entitled to one-half of this community property interest or 36.475 percent of the pension. James argued that the 1978 judgment was res judicata, that Ramona's community property share was limited to $68.81 per month, and that the "time rule" should not be applied. After a hearing on December 14, 1995, the court took the matter under submission.

On January 5, 1996, the court filed its findings and orders after hearing. The court concluded that it had authority to divide the pension pursuant to the jurisdiction retained in the 1978 judgment, and granted Ramona's motion to enter a QDRO based upon the time rule. On January 22, 1996, the court filed an amendment to the order, addressing attorneys' fees. James filed a timely appeal from the court's order of January 5, 1996.

II. Discussion

On appeal, James challenges the trial court's order determining the community property interests in his pension according to the time rule. His main contentions are that the trial court's order impermissibly modifies the 1978 judgment, that the order improperly interprets the parties' agreement, and that the time rule was improperly applied.

A. *Retained Jurisdiction*

James strenuously argues that the language of the 1978 judgment was limited to the retirement benefits with Beckman existing as of 1978, relying on the following sentence in the judgment: "Said retirement benefits having all been earned by [James] during the course of this marriage, they are all

. . . therefore community property." ▓ James contends that any juris-diction "retained" by the court in the 1978 interlocutory judgment must concern only those benefits from the pre-1978 employment period, and that any attempt to divide subsequently earned benefits is an abuse of discretion.

The problem with this argument is that the Beckman pension as it existed in 1978 can no longer be identified *except* as part of James's current total Beckman pension based upon more than 18 years of service (combined pension). To distribute the pension referenced in the 1978 judgment, the court must now separate it from the remainder of the combined pension.

Although the parties' agreement provided for an equal division of "any and all retirement benefits to which [James] may be entitled from [Beck-man]," the agreement also stated that the court "shall retain jurisdiction over the subject matter . . . ." We agree with the trial court that the retention of jurisdiction over the "subject matter" is broad enough to allow the trial court to separate the pension referenced in the 1978 judgment from the remainder of the combined pension.

Given the fact that James was not expected to receive retirement benefits until 1999 (21 years after the agreement), it was reasonable to expect that new pension laws and other future events (including some events not contemplated by the parties) could have an impact on the parties' rights in the pension. Because plans and their benefits may change over time, it is appropriate for the court, through its retained jurisdiction, to reconcile the order and the intent of the parties with later changes in the plan or plan benefits. Although the parties did not contemplate that the community property pension would become part of a larger "combined pension," this is precisely the kind of changed circumstance that makes the retention of jurisdiction appropriate and necessary.

Because the pension referenced in the 1978 judgment has become a commingled part of the combined pension, a determination of how to divide the combined pension is now necessary, not to rewrite or modify the 1978 judgment, but to implement it. The trial court's division of the combined pension is thus consistent with principles of res judicata and the binding effect of the 1978 judgment. We therefore hold that the trial court did not err in determining that it retained jurisdiction to divide the combined pension into (1) a community property portion attributable to pre-1978 years (which was addressed by the 1978 judgment) and (2) a separate property portion (which was not addressed by the judgment).

## B. *Interpretation of the Parties' Agreement*

James also argues that the 1978 interlocutory judgment, which reflects the parties' agreement regarding support and property division, must be interpreted according to statutory requirements for the interpretation of contracts, including those set forth in sections 1636, 1637, 1638, 1644, 1648 and 1654 of the Civil Code. James argues that the mutual intent of the parties concerned only James's first (1960-1974) employment period, and the contract "could never have embraced the 1990 employment because the parties never intended to include that time frame at the time the Judgment was drafted."

We agree that the stipulation must be analyzed in light of the parties' intent and according to statutory requirements for contract interpretation. We also agree that the parties intended to consider *only* the retirement benefits from James's *first* (1960-1974) employment period with Beckman as community property. This conclusion, however, does not address the fundamental problem: separating the retirement benefits from the first employment period (about which the parties contracted) from the other benefits commingled in the current combined pension.

Although this particular issue was not contemplated by the parties, we believe that the stipulated judgment reflects the parties' agreement to have such unanticipated issues addressed by the court in the future: "This court shall retain jurisdiction over the subject matter . . . ." The parties' agreement was not, as James suggests, to somehow "freeze" the value of the community property pension at the level of the 1974 estimate of $137.16 per month. The judgment does not include any fixed monetary amounts. Instead, the parties agreed to an in-kind division of the pension, with the court retaining jurisdiction over the subject matter. The parties' intent was clearly to allow for later implementation of an in-kind division of the *actual* pension, not to award a particular amount based upon estimates 21 years before any actual payment.[2] By providing for the court to retain jurisdiction over the subject matter, the agreement clearly contemplated the possibility

---

[2]This case, in which the judgment does not mention any specific monetary amounts, differs from the case of *In re Marriage of Melton* (1994) 28 Cal.App.4th 931 [33 Cal.Rptr.2d 761], in which the judgment *did* include particular monetary amounts based upon estimates made at the time of the judgment. The benefits were actually much higher than the prior estimates (due to the employee's retirement at age 46 rather than age 45, changes in the plan which increased the benefits, and the classification of the employee in a different group within the plan than the parties anticipated). This court held that the unanticipated increase (the amount by which the actual benefits exceeded the prior estimates) constituted property left undivided by the prior judgment, and therefore remanded the case to the trial court to determine how to divide the omitted portion of the pension. (*Id.* at p. 939.)

that the court would need to address later changes affecting the pension. The court's decision to exercise its retained jurisdiction, clearly contemplated by the parties in the contract, was therefore consistent with statutory and other principles of contract interpretation.

## C. *Application of the Time Rule*

The trial court concluded that the combined pension included both separate property and community property, and that the time rule was the appropriate method for ascertaining the community's interest. ■ When a trial court concludes that property contains both separate and community interests, the court has very broad discretion to fashion an apportionment of interests that is equitable under the circumstances of the case. (*In re Marriage of Hug* (1984) 154 Cal.App.3d 780, 782-783 [201 Cal.Rptr. 676, 46 A.L.R.4th 623].) "[T]he disposition of marital property is within the trial court's discretion, by whatever method or formula will 'achieve substantial justice between the parties.'" (*Id.* at p. 791.) Consequently, we review the trial court's utilization of the time rule to divide the combined pension under an abuse of discretion standard. (*In re Marriage of Adams* (1976) 64 Cal.App.3d 181, 187 [134 Cal.Rptr. 298].)

■ Under the time rule, the community is allocated a fraction of the benefits, the numerator representing length of service during marriage but before separation, and the denominator representing the total length of service by the employee spouse. That ratio is then multiplied by the final plan benefit to determine the community interest. (*In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 522 [137 Cal.Rptr. 318]; *In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 861 [137 Cal.Rptr. 670].)

The rationale for the use of the time rule was set forth in *In re Marriage of Judd, supra,* 68 Cal.App.3d 515: "Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits. The relation between years of community service to total years of service provides a fair gauge of that portion of the retirement benefits attributable to community effort." (*Id.* at pp. 522-523) Using this rationale, courts have frequently used this method of determining the community's interest where the amount of the benefit is substantially related to the number of years of service rendered. (See, e.g., *In re Marriage of Judd, supra,* 68 Cal.App.3d at pp. 519, 522-523; *In re Marriage of Adams, supra,* 64 Cal.App.3d at p. 186.)

In this case, the trial court held that the pension should be divided according to the time rule. The court evidently accepted Ramona's argument that under the time rule, the community's share of the pension was approximately 72.95 percent of the pension (13.6301 marital years / 18.6849 total service years), and that Ramona was entitled to one-half of this amount, or 36.475 percent of the pension.

James challenges the court's decision to apply the time rule to the combined pension on both factual and legal grounds. Factually, he argues that his pension benefit was *not* related in any way to his years of employment with Beckman during his marriage to Ramona. In a declaration submitted to the trial court, James stated: "[T]his [1989 employment with Beckman] was a separately negotiated contract with nothing at all to do with my prior employment with Beckman between 1960 and 1974. I only received the benefits that I did in exchange for a salary reduction. I did not receive these benefits based upon prior employment with Beckman. [¶] 12. My job description was entirely different, . . . my compensation was entirely different, and it was based upon my experience, education, and abilities that I generated the 'perks,' including pension benefits, that I obtained." (Capitalization and underlining omitted.)

The trial court did not find this factual argument persuasive. In its findings, the court stated: "[A]side from James' declaration, there is no evidence that the employment package negotiated in 1989 contained any provisions regarding reinstatement of benefit credits which would otherwise have been lost (the 1989 employment contract with Beckman was not introduced into evidence)." The court found that "James did not meet his burden to prove that the increase in the ultimate pension benefits was a result of post-separation negotiations and not attributable to his first employment period."

■ We have reviewed the entire record on appeal, and find the evidence sufficient to support this finding. Although James's declaration stated that his pension benefits were entirely unrelated to the first employment period, a letter to Ramona's counsel from the Beckman's benefits project manager states that James had two employment periods with Beckman, and that "[b]oth of these employment periods are credited service for Pension Plan benefit accrual." This letter supports Ramona's argument that James's pension was based upon *all* of the years of his service with Beckman, including the years during his marriage to Ramona. Given the conflicting inferences possible from the evidence, the trial court was entitled to find that the pension was, in fact, related to all of James's service years with Beckman, including those during his marriage to Ramona. This factual finding will not be disturbed on appeal.

James's legal argument is that the time rule has been applied in cases in which the employment period "continues uninterrupted beyond the date the judgment of dissolution is entered," (italics omitted) and not in cases involving a "break in service" between two employment periods. James is correct that the cases employing the time rule generally involve a single, continuing period of employment. (See, e.g., *In re Marriage of Judd, supra,* 68 Cal.App.3d 515; *In re Marriage of Adams, supra,* 64 Cal.App.3d 181.) The parties have cited no case in which the time rule has been applied to a pension based upon two separate employment periods.

In *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742 [214 Cal.Rptr. 661], however, the court considered the possibility that the employee spouse might return to her teaching job at some time in the future. The wife worked as a schoolteacher for approximately eight years, partially during the marriage. The court applied the time rule to determine the community interest in her retirement plan (number of months employed between marriage and separation, divided by the total number of months of wife's service). The court stated: "This fraction, multiplied by the benefit paid under the plan, is the community property interest in benefits under the plan and it is awarded one-half to each party. . . . [¶] In making this decision, we acknowledge that the amount which Joan will receive from her pension plan upon achieving eligibility for retirement is less certain than is true with Elmer's plan. It is not known if Joan will return to teaching or what salary level she may ultimately achieve if she does so. By using the formula set forth above, it makes no difference whether or not Joan returns to teaching. This formula still determines that portion of the benefits which are community." (*Id.* at p. 759.) The court thus held that the time rule would properly divide a pension, even if the pension reflected two different periods of noncontinuous employment.

We agree with the *Bergman* court that even where an employee's service is not continuous, a pension based upon total service years may be divided according to the time rule. The rationale for the time rule applies wherever the *total number of years served* by the employee spouse (continuous or otherwise) is a substantial factor in computing the retirement benefits. Although James had two separate employment periods with Beckman, his pension was based upon his *total* service years. The time rule fairly accounts for both the marital and postmarital years of service because it assigns to the community only a portion of the pension corresponding to the portion of service during marriage and before separation.

Finally, we consider the argument, made implicitly by James, that his later service years at high salaries contributed more to the value of his pension

than his earlier years at lower salaries. Similar arguments in cases involving continuous employment have been repeatedly rejected by California courts. For example, in *In re Marriage of Judd*, the husband argued that because his annuity payments were based in part upon postmarital years of service, which would have a significantly greater dollar value than his years of service during the marriage, the community property award should not give equal weight to the different years of service. The *Judd* court, however, held that a husband and wife share the same qualitative interest in the retirement rights, and the fact that a plan reflects subsequent salary increases does not alter the community's interest in those rights. "[A]n employee's contributions in the early years of employment during the marriage, even though based on a smaller salary, may actually be worth more than contributions during the post-separation years, due to the longer period of accumulated interest and investment income prior to the commencement of benefit payments." (*In re Marriage of Judd*, *supra*, 68 Cal.App.3d at p. 523.) The court therefore gave the first service years (during the marriage) as much weight in computing total service as the last few years (after separation).

Like the court in *Judd*, we are persuaded that the community contribution to James's pension (approximately 14 years, beginning in 1960) was crucial to its final value and to the amount received by James. Under these circumstances, despite the break in service and the salary differential, the trial court acted within its discretion when it utilized the time rule to apportion the parties' interests in the pension.

## D. *Joinder of Pension Plan*

James argues that because Ramona failed to join the Beckman Pension Plan in 1978, she should be estopped from receiving a "windfall" and being "unjustly enriched" by the 1990 employment period.[3] He relies upon the statutory language of former section 4351 of the Civil Code, which provided in part that the superior court has jurisdiction to make orders regarding support and settlement of property rights, "provided, however, no such order or judgment shall be enforceable against any employee pension benefit plan unless the plan has been joined as a party to the proceeding."

This argument is without merit. Ramona's prior failure to join the pension plan affected only the enforceability of the judgment against the pension plan, not whether Ramona had a particular substantive interest in the pension. Ramona has received no "windfall" from the 1990 employment period

---

[3]James argues that if the pension plan had been joined in the proceedings in 1978, the judgment would have been different, and the current matter "would, in all likelihood, never have come before this Court."

(which was, and remains, James's separate property) or from the joinder of the Beckman Pension Plan on December 4, 1995, pursuant to her request.

### III. Disposition

The trial court's order of January 5, 1996, as modified by the trial court's amendment dated January 22, 1996, is affirmed.

Premo, J., and Bamattre-Manoukian, J., concurred.