[No. G024439. Fourth Dist., Div. Three. Aug. 29, 2001.]

In re the Marriage of EDMUND L. and MARY ETTA BOWEN.
EDMUND L. BOWEN, Respondent, v.
MARY ETTA BOWEN, Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.A.*

**COUNSEL**

Nancy Bennett Bunn for Appellant.

Law Offices of Kevin G. Musulas, Kevin G. Musulas; and Marsha Faith Levine for Respondent.

**OPINION**

**MOORE, J.**—Mary Etta Bowen (appellant) filed an order to show cause, seeking a share of the Flying Tiger Lines (Flying Tiger) pension plan

benefits of her former husband, Edmund L. Bowen (respondent). In affixing the share to be paid to appellant, the court took into consideration not only the number of years respondent worked for Flying Tiger, but also the number of years respondent worked for Federal Express, Flying Tiger's successor by merger. Appellant claims that by taking the years of Federal Express employment into consideration, the court improperly diluted her share of the Flying Tiger fixed plan and variable plan pension benefits. She also contends the Flying Tiger variable plan pension benefits are 100 percent community property because the plan was fully funded by the time she and respondent separated. We agree with appellant's first assertion of error, and reverse and remand.

# I

## FACTS

Appellant and respondent were married in 1962 and respondent began employment with Flying Tiger in 1966. The parties separated in 1982 and their marriage was dissolved by judgment in 1984. Respondent continued employment with Flying Tiger until 1989, when Flying Tiger and Federal Express merged. Thereafter, respondent worked for Federal Express until his retirement in 1996. At the time of retirement, respondent elected to receive Flying Tiger pension benefits in the form of a lump sum payment plus monthly benefits.

Appellant filed an order to show cause, seeking a qualified domestic relations order to establish her rights to benefits under respondent's two Flying Tiger pension plans. She asserted she should be entitled to a 50 percent share of the variable plan benefits and a 34.375 percent share of the fixed plan benefits. Appellant explained each fraction was determined by using the number of years of respective plan participation during marriage as the numerator, and the total number of years of respective plan participation as the denominator. She arrived at a denominator of 15.58 years for the variable plan and 22.67 years for the fixed plan, in each case excluding the seven years of service with Federal Express. Respondent disagreed, arguing the denominator with respect to each plan should be 30 years, the total number of years he worked for Flying Tiger and Federal Express combined. The court agreed with respondent and awarded appellant 25.9 percent of the benefits under each plan.

Appellant claims error. She contends this error cost her a lump sum payment of $76,940, plus $150 per month for life.

## II

### DISCUSSION

A.  *Jurisdiction**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

B.  *Description of Pension Plans*

There are two Flying Tiger pension plans at issue, the fixed plan and the variable plan. The fixed plan is a defined benefit plan and the variable plan was initially established as a defined contribution plan. At trial, respondent's expert testified that the variable plan had become more of a hybrid plan than a defined contribution plan. Due to a collective bargaining agreement, the variable plan came to be used as a "feeder" plan to ensure payments under the fixed plan. In other words, if the fixed plan were underfunded, monies from the variable plan could be used to fund the defined benefits payable under the fixed plan. The variable plan was funded by Flying Tiger contributions. All contributions to the variable plan ceased in 1982, the year the parties separated.

Respondent also participated in a Federal Express pension plan. Appellant makes no claim to the benefits under that plan.

C.  *Time Rule*

■    The trial court "must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone. [Citations.]" (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 187 [74 Cal.Rptr.2d 825, 955 P.2d 451].) It has discretion in the selection of the method of apportionment. (*Ibid.*) The most commonly used method is the time rule. (*Ibid.*) Under that rule, the community interest in the retirement benefits is determined "to be that fraction of retirement assets, the numerator of which represents the length of service during the marriage but before the separation, and the denominator of which represents the total length of service by the employee-spouse." (*In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 522 [137 Cal.Rptr. 318].)   ■    The issue here is the number of years of service to be utilized as the denominator with respect to each of the two Flying Tiger pension plans. The parties disagree as to whether the seven years of Federal Express employment should be included in that number.

---

*See footnote, *ante*, page 1291.

The expert opined the seven years of Federal Express service should be factored in for four reasons: (1) respondent's employment continued post-merger; (2) different rates of pay, based on rank, were taken into consideration in the calculation of benefits; (3) respondent could not have begun receiving benefits on the date of the merger without suffering an early retirement penalty; and (4) the marital dissolution judgment provided the benefits would be divided on retirement, taking total length of employment into consideration. Respondent offers an additional reason: The investment value of his benefits increased over the seven-year period of Federal Express employment. We address these points one by one.

### 1. *Postmerger employment/rates of pay*

In applying the time rule, we bear in mind the following: "Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits." (*In re Marriage of Judd, supra,* 68 Cal.App.3d at p. 522.) Respondent contends the court properly applied this rule to include the seven years of Federal Express service because the amount of Flying Tiger pension benefits was directly related to length of employment. In support of this, he avers the Flying Tiger pension plan documents define years of participation as years of active service. However, the documents which established the pension plans are not a part of the record on appeal. Moreover, respondent makes no claim that the plan documents address years of service with a *successor* employer. In fact, there is no evidence whatsoever the seven years of Federal Express employment were necessary to earn any portion of the Flying Tiger pension benefits.

To the contrary, the expert testified the Flying Tiger pension plans were not merged with the Federal Express pension plan, and the Flying Tiger pension benefits were based on respondent's Flying Tiger wages, to the exclusion of his Federal Express wages. This is consistent with the analysis provided by the pension plan administrator. The administrator's printout showing the figures on which the pension benefits were based listed years of continuous service as 22.6667 years, i.e., the number of years of Flying Tiger service exclusive of the years of Federal Express service.

In calculating the benefit, the administrator took into consideration rank and rate of pay for the last five years of service. This was a critical factor in the court's decision to include Federal Express service in the apportionment formula. What the court overlooked was the fact the administrator took into

consideration rank and rate of pay for the last five years of Flying Tiger service, not Federal Express service. As shown on the administrator's print-out, and consistent with respondent's testimony at trial, respondent attained the rank of captain on March 16, 1986, while employed with Flying Tiger. The plan administrator, in evaluating rank and rate of pay for the last five years of premerger service, credited respondent with 41 months of service as captain, based on the dates March 16, 1986, through August 6, 1989, and 19 months of earlier service as first officer. Very simply put, neither rank with Federal Express nor years of service with Federal Express was relevant to the calculation of the Flying Tiger pension benefits.

### 2. *Early retirement penalty*

We next consider the issue of the early retirement penalty. The expert considered the years of Federal Express employment to be an appropriate component of the denominator in part because respondent could not retire at the date of the merger without suffering an early retirement penalty. From this, the expert reasoned, the years of Federal Express employment served to increase the amount of the Flying Tiger benefits, because respondent earned more under the Flying Tiger pension plans by waiting.

But the judge exposed the fallacy of this argument. He asked whether it was necessary for respondent to continue work with Federal Express in order to receive full benefits at age 60. The expert indicated it was not. Respondent could have worked for any company at all, or for that matter ceased work at the date of the merger and remained unemployed for those seven years, and the result would have been the same. What was key was not employment with Federal Express, but simply the date respondent elected to begin receipt of benefits. In other words, the benefits had been fully earned by the date of the merger. As long as respondent waited until age 60 to start receipt of benefits, he would receive full benefits.

The result of the time rule "is not unreasonable when the 'relative contributions of the community and separate estates' are accounted for. [Citation.]" (*In re Marriage of Lehman, supra,* 18 Cal.4th at p. 187.) In this case, it is unreasonable to include the seven years with Federal Express in the denominator, because doing so dilutes the community property share, and thereby does not fairly account for it.

Two cases illustrate this well. The first is *In re Marriage of Henkle* (1987) 189 Cal.App.3d 97 [234 Cal.Rptr. 351]. In *Henkle,* the husband was employed for 32 years, and was married for six of those years. His wife argued she was entitled to a 6/32 fraction of his retirement benefits. The court

disagreed. Under the terms of the retirement plan, maximum retirement benefits were earned after 30 years of service. And the parties were married for only four of the 30 years in question. The proper fraction was 4/30. Quoting *In re Marriage of Judd, supra,* 68 Cal.App.3d at page 522, the *Henkle* court recognized that only 30 years of service were "necessary to earn" the retirement benefits. Because the last two years of service did not contribute to the total number of years of service on which the amount of retirement pay depended, those years were not included in the denominator. Similarly, in the case before us, the seven years of Federal Express service are excluded from the denominator, because they did not contribute to the total number of years of service on which the Flying Tiger pension benefits were based.

The second enlightening case is *In re Marriage of Hughes* (1994) 26 Cal.App.4th 34 [31 Cal.Rptr.2d 250]. In *Hughes,* the husband was on active military duty for 20 years. He thereafter transferred to the military reserves to serve another 10 years. Under the terms of the retirement plan, only the years of active duty counted toward the retirement benefit, even though a total of 30 years of service in active duty and reserves combined was a condition precedent to receipt of the retirement pay. Even though the husband would not be eligible for retirement pay until he completed his 10 years in the reserves, the 10-year period was not taken into consideration in determining the community and separate property interests in the retirement benefits. In the case before us, respondent's retirement benefits were based on his years of service with Flying Tiger prior to the merger and he was eligible to receive retirement benefits at the date of the merger. He did not have to wait the additional seven years, though he chose to do so. Clearly, the additional seven years with Federal Express cannot be included in the denominator.

### 3. *Investment value of benefits*

Respondent also argues the seven years of Federal Express service should be factored into the apportionment formula because the cash value of his benefits increased throughout that entire period of time. But this argument suffers from the same pitfalls as the early retirement penalty argument. Assuming the investment value of respondent's pension benefits did increase over that seven-year period of time, the same would have been true even if respondent had terminated employment in 1989 and never worked again. What is determinative of the total investment value is the date respondent elected to begin receipt of pension benefits, not the additional years of employment. The benefits were fully earned in 1989 and this is what governs (see *In re Marriage of Henkle, supra,* 189 Cal.App.3d 97), not the effect of market fluctuations and accruals on benefits already earned. (See also *In re*

*Marriage of Lehman, supra,* 18 Cal.4th at pp. 174-175 [nonemployee spouse owns community property interest in retirement benefits as enhanced post-separation].)

### 4. *Interpretation of judgment*

The 1984 judgment on reserved issues provides, with respect to the pension plans, as follows: "The parties shall each be awarded one-half of the community interest in the Flying Tiger Fixed and Variable Pension Plans. Said plans shall be joined and the court shall reserve jurisdiction to divide and distribute the interest in said plans. . . . [Wife] shall receive one-half of the benefit from said Fixed and Variable Plans in the ratio that [husband's] employment during marriage and prior to separation bears to his *total employment* during marriage *and after marriage,* i.e. the Brown For-mula. . . . The payments to [wife] for her one-half of the community interest shall be made upon petitioner's retirement or age 60, whichever shall first occur. . . ." (Italics added.) Both respondent and his expert seize upon the italicized language to show the court, at the time of entry of the judgment, intended for the entire period of respondent's employment to be included. Respondent goes even further, and says appellant is seeking a modification of the judgment and it is too late for any modification, because appellant did not challenge the judgment within the time permitted by law.

Respondent's position is not supportable. Given the fact respondent was not expected to receive retirement benefits for a number of years after the date of the judgment, it was reasonable to expect that future events not contemplated by the parties could have an impact on the parties' rights in the pension benefits. (*In re Marriage of Gowan* (1997) 54 Cal.App.4th 80, 86 [62 Cal.Rptr.2d 453].) ■ "Because plans and their benefits may change over time, it is appropriate for the court, through its retained jurisdiction, to reconcile the order and the intent of the parties with later changes in the plan or plan benefits." (*Ibid.*) ■ The parties provide no indication that, in 1984 when the judgment was entered, they had any reason to anticipate a merger would follow five years later and an issue would arise as to the interpretation of the pension plans postmerger.

The judgment language concerning total years of employment per the *Brown* formula (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164] [to the extent pension rights derive from employment during marriage, they comprise a community asset subject to division]), surely was intended to refer to the total years of employment contributing to the Flying Tiger pension rights. Had respondent terminated employment with Flying Tiger in 1989, and gone to work for an

unrelated employer, the court would not have intended those subsequent years of employment to be included in the denominator, since those years of employment could not affect the benefits under the Flying Tiger pension plans. The situation is no different when, in 1989, respondent went to work for Federal Express, which offered respondent a new Federal Express pension plan separate and apart from its predecessor's pension plans. Respondent would like his years of Federal Express service to be counted twice— once towards the Federal Express pension plan and once towards the Flying Tiger pension plans, to which Federal Express never even made any contributions. The judgment certainly does not countenance this result.

What appellant seeks is not to rewrite or modify that judgment, but to implement it. (See *In re Marriage of Gowan, supra,* 54 Cal.App.4th at p. 86.) ■ In so doing, the court must "arrive at a result that is 'reasonable and fairly representative of the relative contributions of the community and separate estates.' [Citation.]" (*In re Marriage of Lehman, supra,* 18 Cal.4th at p. 187.) It must achieve "substantial justice" between the parties. (*In re Marriage of Gowan, supra,* 54 Cal.App.4th at p. 88.) ■ To include the seven years of Federal Express employment in the denominator would be to aggrandize the separate property share and diminish the community property share, a result that would violate these maxims. The court abused its discretion in so providing. (See, e.g., *In re Marriage of Lehman, supra,* 18 Cal.4th at p. 187 [abuse of discretion standard applies].)

D. *Variable Plan*

■ While her argument is less than clear, it appears appellant contends there is more than one issue with respect to the proper apportionment of the variable plan benefits. In addition to arguing the years of Federal Express service should not be factored into the equation, appellant suggests the years of postseparation and premerger employment with Flying Tiger should be excluded as well. Appellant contends the variable plan benefits are 100 percent community property because the variable plan was fully funded when the parties separated in 1982. But the proper application of the time rule is dependent upon the date the benefits are earned (see *In re Marriage of Henkle, supra,* 189 Cal.App.3d 97), not when the plan is funded.

While appellant presents minimal argument as to why the application of the time rule should exclude consideration of the years of Flying Tiger employment after completion of variable plan funding in 1982, one might surmise her argument is based on the premise all defined contribution plan benefits are fully earned when funding ceases. (Cf. Blair et al., Cal. Marital Settlement and Other Family Law Agreements (Cont.Ed.Bar 2d ed. 2000)

QDROs and Other Retirement Benefits Orders, § 20.19, p. 395 [community property interest in defined contribution plan consists of contributions between date of marriage and date of separation, adjusted for change in value].) If this is the basis of her argument, however, she fails to address the significance of the transformation of the variable plan into a hybrid plan.

The expert testified at length as to the status of the variable plan as a hybrid plan, rather than a defined contribution plan, and as to the extent to which the variable plan, as a feeder plan, was intertwined with the fixed plan. Appellant does not cite to any pension plan documents or collective bargaining agreement provisions which contradict the expert's description of the variable plan. She also fails to cite to any legal authorities concerning the distinctions between defined benefit, defined contribution, and hybrid plans.

At oral argument, appellant claimed there was no evidence to show any funds from the variable plan were ever actually fed into the fixed plan. However, the expert opined, in essence, that respondent's election to receive a lump sum payment from the variable plan had the effect of reducing the amount of monthly benefits thereafter available under both the fixed and the variable plans, thus underscoring the complex interrelationship between the two plans. Appellant fails to cite. to any portion of the record undermining the expert's interpretation of the mechanics of calculating benefits. This court, then, must accept the expert's characterization of the variable plan as a feeder plan utterly intertwined with the fixed plan. This being the case, we have no basis for applying different methods of apportionment to the variable plan benefits and the fixed plan benefits. Since the years of Flying Tiger service until the date of the merger must be considered in determining fixed plan benefits, they must also be taken into consideration in determining the benefits under the symbiotic variable plan.

Appellant has not met her burden to show the court erred in including in the denominator of the apportionment formula the years of Flying Tiger employment between the date of separation and the date of merger. (See *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 [187 Cal.Rptr. 200] [all intendments indulged to support the judgment and appellant has the burden of proving error].) In any event, we question whether she could have met that burden, because the calculation of benefits with respect to years of service and rank, as was done in this case, is characteristic of a defined benefit plan. (See Blair et al., Cal. Marital Settlement and Other Family Law Agreements, *supra*, QDROs and Other Retirement Benefits Orders, § 20.11, p. 390.) This would indicate the variable plan had lost its identity as a defined contribution plan, consistent with the expert's testimony.

## III

### DISPOSITION

The order is reversed and remanded. Appellant shall recover her costs.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.