Filed 2/6/23  Marriage of Jacobsen CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re Marriage of LAURIE and WAYNE JACOBSEN. | |
| LAURIE JACOBSEN, Appellant, v. WAYNE JACOBSEN, Respondent. | G060633 (Super. Ct. No. 11D000177) O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Lon F. Hurwitz, Judge.  Reversed and remanded with directions.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller; Law Offices of Lisa R. McCall, and Lisa R. McCall for Appellant.

Dennis Temko and Stephen Temko for Respondent.

Wayne and Laurie Jacobsen were married for more than 23 years.[1]  During their marriage, Wayne became an equity partner at O'Melveny & Myers, LLP (O'Melveny or OMM).  When Wayne and Laurie separated, Wayne had been an equity partner at O'Melveny for more than 20 years.  A month after they separated, Wayne turned 55 years old.  Based on his age and years of service, Wayne was eligible to retire and receive a pension benefit from O'Melveny, which the parties refer to as the "Partnership Agreement Retirement Benefit" (PARB).  The PARB is a defined benefit program for the law firm's equity partners.  Wayne did not retire at age 55, but instead, he continued in his role at the firm for about 10 more years.

When Wayne retired, Laurie requested an order from the trial court determining the community property interest in Wayne's PARB payment under the time rule.  The time rule is used to apportion the community and separate property interests in a retirement benefit accrued during marriage.  (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 183 (*Lehman*).)  It is a formula that calculates the community property share of a retirement benefit by dividing the length of the employee spouse's service performed on behalf of the community (the numerator) by the total length of service required for the retirement benefit (the denominator).  (*Gray, supra*, 155 Cal.App.4th at p. 508, fn. 3; *In re Marriage of Bowen* (2001) 91 Cal.App.4th 1291, 1295-1298 (*Bowen*); *In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 522.)

In the trial court, the parties agreed the numerator in the time rule formula was 251 months—the number of months between Wayne becoming an equity partner at O'Melveny and the date of Wayne and Laurie's separation.  Their dispute in the trial court and on appeal is what the time rule's denominator should be.  The trial court determined the denominator was 371 months, the time between Wayne becoming an

---

[1]  For ease of reference and pursuant to the custom in family law cases, we refer to the parties by their first names.  (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 508, fn. 1 (*Gray*).)  No disrespect is intended.

equity partner and the date of his retirement. Based on these numbers, the court calculated the community's interest in the PARB as 67.65 percent and equally split this portion between the two parties. Wayne was awarded a separate property interest in the PARB of 32.35 percent.

Laurie contends the court erred in its apportionment of the community and separate property interests. She asserts the correct denominator is 252 months because the PARB was fully earned one month after they separated and Wayne's 10 years of postseparation service did not increase the PARB. Under Laurie's calculations, the community's interest in the PARB is 99.6 percent and Wayne's separate property interest is .4 percent.

We conclude the court erred in its application of the time rule. Once the maximum retirement benefit has been earned, a period of further employment is not included in the time rule formula. (*In re Marriage of Henkle* (1987) 189 Cal.App.3d 97, 100 (*Henkle*).) Time of service by the employee spouse that does not contribute to or increase the value of the retirement benefit is omitted because its inclusion dilutes the community property share of the retirement benefit. (*Bowen, supra*, 91 Cal.App.4th at p. 1297.) This means the court should have excluded from the denominator Wayne's postseparation service that did not contribute to the PARB. From our record, we can tell, at a minimum, the court should have excluded from its calculation Wayne's years of service after he reached age 60 because Wayne had earned the maximum benefit at that point and Wayne's service after age 60 did not increase the PARB's value. We are unable to determine if the court also should have excluded Wayne's years of service between the ages of 55 and 60, as it is not entirely clear from the record if Wayne's continued service during this time period increased the PARB's value. We therefore reverse the order and remand the matter for the trial court to recalculate the community and separate property interests in the PARB.

FACTUAL AND PROCEDURAL BACKGROUND

Wayne began working at O'Melveny in May 1985. About two years later, in April 1987, he and Laurie married. During their marriage, in February 1990, Wayne became an equity partner with O'Melveny. Laurie and Wayne separated in December 2010. Between the dates they married and separated, Wayne had been an O'Melveny equity partner for 20.912 years.

The PARB is one of the retirement benefits provided by O'Melveny. It is a defined benefit program for O'Melveny's equity partners.[2] Once an equity partner reaches age 55 and has provided 15 years of partnership service at O'Melveny, the equity partner can retire and receive a PARB payment. After an equity partner turns age 60, the years of partnership service required for the PARB is reduced from 15 to 10 years. Thus, the two factors determining a partner's eligibility are: (1) age at retirement and (2) years of equity partnership service.

Once an equity partner becomes eligible, "the only determinant of the amount of an equity partner's monthly benefit under PARB is the equity partner's age [at] benefit commencement." The calculation of the PARB payment to an equity partner with 15 years of service and age 55 or older "is not affected by any of the following: [¶] A. The equity partner's compensation during partnership, [¶] B. The equity partner's share of firm equity, or [¶] C. The number of years of equity partnership service in excess of 15."

The PARB payable to an equity partner at age 55 "is actuarially equivalent in value to the PARB payable" to the partner at age 60. This means the monthly PARB payment at age 55 is less than the monthly payment at age 60, but based on actuarial

---

[2] O'Melveny's partnership agreement, which describes and explains the PARB, was not provided to the trial court and therefore is not part of the appellate record. In 2014, the parties filed a stipulation containing agreed statements concerning the PARB's relevant provisions (2014 stipulation).

factors in the partnership agreement, the payments at age 55 will equal the payments at age 60 as the payments are made over a larger number of years. For each year the equity partner continues service after age 55, the PARB's monthly payment amount increases (based on actuarial values) until age 60, where it maxes out. According to the parties' 2014 stipulation: "In defined benefit pension plans, it is common to impose a reduction to a normal retirement age monthly benefit so as to make the plan's cost of benefits for an early commencement actuarially equivalent to the plan's cost for a later commenced benefit." The 2014 stipulation further states: "Measured on any date between an equity partner's ages 55 through 60, PARB benefits payable starting *after* age 60 are lower in actuarial present value than those payable starting prior to age 60." (Italics added.)

O'Melveny has not established a trust for the PARB payments. Instead, payments are made from O'Melveny's assets, including "the current income of the partnership." During his equity partnership, Wayne bore "a portion of the cost of the payment of PARB benefits to *other* partners [because] partnership income [was] used to fund ongoing PARB benefits." (Italics added.)[3]

In January 2011, about a month after the parties separated, Wayne turned 55 years old. He had already attained 15 years of equity partnership service (as of February 2005) and all 15 years were during the marriage. Thus, Wayne was eligible to retire and receive a PARB payment in January 2011, about a month after separation. At that time, 99.6 percent of his equity partnership service required to earn the PARB had been performed during the period between the date of marriage and the date of separation.

In October 2012, judgment of dissolution was entered, which included the parties' stipulation concerning the division of the marital property (the stipulated

---

[3] In a declaration filed in the trial court, Wayne explained O'Melveny uses current practice of law income to make the PARB payments to retired partners; this income would otherwise be distributed to active partners as partnership earnings.

judgment). The stipulated judgment stated each party was to receive: "One-half of the community property interest in [Wayne's] OMM Section 10 Benefit Plan (a/k/a PARB), such community property interest shall be determined as of the date benefit payments commence according to the time rule." The stipulated judgment also confirmed as Wayne's property his separate interest in the PARB.

Wayne's three other retirement plans were also addressed in the stipulated judgment, with each party receiving one-half of the community property interest in those plans. The stipulated judgment stated Wayne was to prepare and transmit to Laurie's counsel a Qualified Domestic Relations Order (QDRO) to effectuate the assignment provisions concerning the division of all four of his retirement benefit plans. The stipulated judgment further stated the QDRO concerning the PARB "will provide that [Laurie's] share will be paid to her as [Wayne's] share is paid to him." The stipulated judgment indicated the court retained jurisdiction for certain purposes, including "to determine the value of, and community interest in, any employment or retirement benefit not specifically . . . distributed" within the judgment, "to value and divide any non-distributed assets and . . . to enforce all provisions and resolve all disputes arising [from the judgment]."

The parties were unable to reach an agreement concerning the ratio of the community and separate property interests in the PARB. In 2013, Laurie sought an order from the trial court concerning this and other matters. Wayne filed a response. The parties stipulated to certain "statements of facts, rulings, and circumstances" concerning the PARB in the 2014 stipulation. The court held a hearing on the matter in February 2014. The court concluded it could not determine the community property interest in the PARB at that time because the judgment stated the interest would be determined when benefit payments commenced and benefits had not yet commenced.

Wayne retired from O'Melveny on December 31, 2020. The next month, the PARB payments commenced, and Wayne turned age 65.

6

In February 2021, Laurie requested the court enter an order designating the community property interest in the PARB as 99.6 percent and dividing it equally between the parties. Wayne opposed Laurie's request. He asserted the stipulated judgment's language the community's interest in the PARB "'be determined as of the date benefit payments commence according to the time rule'" required "the time rule's numerator and denominator . . . be determined as of [the] date" benefit payments commenced.

The court held a hearing on Laurie's request for an order. After the hearing, the court received additional briefing from the parties on the time rule formula and how to apply it. The disputed issue was whether Wayne's 10 years of postseparation service should be included in the time rule's denominator: If included, the community property interest in the PARB would be 67.65 percent, and if not included, the community property interest would be 99.6 percent.

At the next hearing, the court focused on the stipulated judgment's language. The court noted the parties agreed in the stipulated judgment, "'the community property interest shall be determined as of the date benefit payments commence.' [They did not] say as of the date benefit payments vest." The court stated the time rule as defined in *Gray, supra*, 155 Cal.App.4th 504 and *Lehman, supra*, 18 Cal.4th 169 should be used to calculate the community property interest in the PARB. The court continued the matter to see if the parties could agree on the calculation based on its ruling. They did not.

The findings and order after hearing was filed in June 2021. Laurie filed a motion for reconsideration, which was granted by the court. But after hearing argument, the court declined to change the order. The court apportioned the PARB as 67.65 percent community property and 32.35 percent Wayne's separate property. Laurie appealed.

DISCUSSION

The sole issue in this appeal is whether the trial court correctly included Wayne's 10 years of postseparation service when using the time rule to apportion the community property interest in the PARB. Laurie argues this was error. Wayne contends this case is not about apportioning "the PARB in the first instance" but about interpreting the stipulated judgment. He asserts Laurie agreed "to a specific apportionment of the PARB, and the only meaningful analysis is to interpret the parties' agreement." After providing a brief overview of the time rule, we first interpret the parties' stipulated judgment and then analyze the court's application of the time rule.

I.

OVERVIEW OF THE TIME RULE

In a dissolution proceeding, "[t]he superior court must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone. [Citations.]" (*Lehman, supra*, 18 Cal.4th at p. 187.) The time rule is the most frequently used method for apportioning such interests (*ibid.*), and here, it is the method the parties agreed upon in the dissolution judgment.

"The rationale for the use of the time rule was set forth in *In re Marriage of Judd, supra,* 68 Cal.App.3d 515: 'Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community *in proportion to the total length of service necessary to earn those benefits*. The relation between years of community service to total years of service provides a fair gauge of that portion of the retirement benefits attributable to community effort.' [Citation.] Using this rationale, courts have frequently used this method of determining the community's interest where the amount of

8

the benefit is substantially related to the number of years of service rendered. [Citations.]" (*In re Marriage of Gowan* (1997) 54 Cal.App.4th 80, 88 (*Gowan*), italics added.) Once the maximum retirement benefit has been earned, further years of service are not included in the time rule formula. (*Henkle, supra*, 189 Cal.App.3d at p. 100.) When using the time rule, "the superior court must arrive at a result that is 'reasonable and fairly representative of the relative contributions of the community and separate estates.' [Citation.]" (*Lehman, supra*, 18 Cal.4th at p. 187.)

## II.

### ANALYSIS OF THE STIPULATED JUDGMENT

"'Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally.' [Citation.] 'The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.]'" (*In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1518 (*Simundza*).) "'Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.)

"The interpretation of a written instrument is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citation.]" (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1120.) Analyzing the terms of the settlement agreement is "a task which we undertake independently. We are not bound by the trial court's analysis and conclusions regarding the interpretation to be given the settlement agreement and judgment." (*In re Marriage of Davis* (2004) 120 Cal.App.4th 1007, 1017-1018.)

9

As stated *ante*, under the terms of the stipulated judgment, each party was to receive: "One-half of the community property interest in [Wayne's] OMM Section 10 Benefit Plan (a/k/a PARB), such community property interest shall be determined as of the date benefit payments commence according to the time rule." Independently reviewing this language, we conclude this provision reflects the parties' agreement as to three points: (1) the community property interest in the PARB will be equally divided; (2) the time rule will be used to determine the community property interest in the PARB; and (3) this determination will be made when the benefit payments commence.

We agree with Wayne the term "time rule" used in this provision has an established usage in family law. But we do not agree with Wayne's contention that when the time rule is used, the denominator must be "the total length of years [the employee spouse] rendered service." Under its established usage in family law, the time rule does not include a period of service after the maximum retirement benefit has been earned. (*Henkle, supra*, 189 Cal.App.3d at p. 100; *Bowen, supra*, 91 Cal.App.4th at pp. 1297-1298.) Wayne's interpretation would dilute the community property interest in the asset. Each day included in the denominator after the maximum retirement benefit has been earned dilutes the community's share. This is inconsistent with the California Supreme Court's decree in *Lehman* that the time rule's result fairly account for the community's contribution. (*Lehman, supra*, 18 Cal.4th at p. 187.) Such dilution and interpretation also conflicts with the stipulated judgment's clear statement the parties intended to equally divide the community's interest in the PARB.[4]

For defined benefit plans like the PARB, it is common for parties to wait until benefits commence to apportion the community and separate property interests in

---

[4] "'California recognizes the objective theory of contracts [citation], under which "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation" [citation]. The parties' undisclosed intent or understanding is irrelevant to contract interpretation.' [Citation.]" (*Simundza, supra*, 121 Cal.App.4th at p. 1518.)

the retirement benefit. The reason is that after separation or dissolution, various events and conditions, including modification of the retirement-benefit formula, may impact the amount of the benefit received at retirement. (*Lehman, supra*, 18 Cal.4th at p. 178.) "Changes in the retirement-benefit formula may be frequent. [Citation.]" (*Ibid*.) Until the employee spouse retires, the parties may not know exactly how the benefit will be calculated. Once the benefit formula is ultimately determined, the time rule may be used to apportion the community and separate property shares in the benefit. (*Id.* at p. 184.)

We conclude the parties agreed in the stipulated judgment that when benefit payments commenced and the PARB was then defined, at that time, the community property interest in the PARB would be determined according to the time rule. We next consider whether the court erred in its application of the time rule.

III.

APPLICATION OF THE TIME RULE

A trial court's application of the time rule to apportion the community and separate property interests in a retirement benefit is reviewed for an abuse of discretion. (*Lehman, supra*, 18 Cal.4th at p. 187; *Gowan, supra*, 54 Cal.App.4th at p. 88.) "[W]hen a trial court misunderstands or misapplies the applicable legal standard, it has not properly exercised its discretion. [Citation.]" (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 680.)

The parties agree, as do we, the court correctly calculated the time rule's numerator. The parties agree the numerator is 251 months—the time between Wayne becoming an O'Melveny equity partner (February 1990) and the date of his and Laurie's separation (December 2010). Their dispute lies in the time rule's denominator. They disagree as to whether Wayne's 10 years of postseparation service should be included in the denominator.

11

Laurie contends the denominator should be 252 months, the number of months between Wayne becoming an equity partner at O'Melveny (February 1990) and when he earned the PARB benefit (January 2011). Laurie asserts the time rule formula is 251/252. Pursuant to her calculations, the community's interest in the PARB is 99.6 percent and Wayne's separate property interest is .4 percent. When the community property interest is divided in half, each party receives 49.8 percent of the community's interest.

Wayne asserts the court properly determined the time rule's denominator should include all of his years of service as an O'Melveny equity partner, which totaled 371 months. Adopting Wayne's argument, the court calculated the time rule fraction to be 251/371, meaning the community property interest in the PARB is 67.65 percent. Under this calculation, each party's half of the community property interest in the PARB is 33.825 percent. The court concluded Wayne's separate interest is 32.35 percent.

The parties' dispute boils down to whether the denominator in the time rule's formula should be 252 as Laurie argues or 371 as Wayne contends and the court used. We are not convinced either is the right answer.

The trial court included all of Wayne's years as an O'Melveny equity partner in the denominator, even the years worked after he earned the maximum retirement benefit. We conclude the court abused its discretion by including in the time rule's denominator Wayne's postseparation service that was unnecessary to earn or increase the PARB. The court's calculation failed to account for an important principle underlying the time rule. As a panel of this court emphasized in *Bowen, supra*, 91 Cal.App.4th 1291, "'the community is entitled to have its share [of the retirement benefits] based upon the length of service performed on behalf of the community in proportion to the total length of service *necessary to earn those benefits*.' [Citation.]" (*Id.* at p. 1296, italics added.) This means the time rule's denominator is the length of service upon which the retirement benefits are based. This may or may not equal the

12

total number of employee service years; it depends on the employer's retirement benefits formula. (Cf. *Lehman, supra*, 18 Cal.4th at p. 187 [husband's retirement benefit based on "his final compensation, length of service, and a per-service-year multiplier"].) Here, the denominator as calculated by the court included years of service that did not contribute or add value to the PARB, and therefore, the court erred.

Two cases illustrate the principle that years of service not tethered to earning or enhancing the retirement benefit should be omitted under the time rule. In *Henkle, supra*, 189 Cal.App.3d 97, the husband was employed for 32 years. (*Id.* at p. 98.) At least 20 years of service were necessary to earn retirement benefits; after 30 years, the maximum benefit was reached. (*Id.* at p. 99.) The *Henkle* court noted, "the last two years of [the husband's] military service did not contribute to the total number of years of service—30—on which the amount of retirement pay depends." (*Id.* at p. 100.) Thus, the Court of Appeal concluded the correct denominator under the time rule fraction was 30, not 32 years, because the husband's last two years of service were not necessary to earn any benefits and did not contribute to his retirement pay. (*Ibid.*) The Court of Appeal held once maximum retirement benefits have been earned, further employment does not count in the time rule calculation. (*Id.* at p. 98.)

A panel of this court addressed an analogous situation in *Bowen, supra*, 91 Cal.App.4th 1291. There, the husband was originally employed by Flying Tiger Lines prior to its merger with Federal Express, where he worked until his retirement. (*Id.* at p. 1294.) The issue was whether the husband's years working for Federal Express should be included in the time rule's denominator in apportioning the community property interest in the benefits under the Flying Tiger Lines pension plan. (*Id.* at p. 1297.) We concluded the husband's years of service at Federal Express should be excluded from the denominator "because they did not contribute to the total number of years of service on which the Flying Tiger pension benefits were based." (*Id.* at p. 1298.)

In the present case, the record shows once an equity partner reaches age 60 with 10 years of service, any service beyond that time does not increase the PARB. When Wayne reached age 60, he had the required years of service to retire and receive the maximum PARB payment. Wayne retired less than a month before his 65th birthday. Wayne's years of service *after* he reached age 60 should have been excluded from the time rule's denominator because they were unnecessary to earn the PARB and did not increase its value.

Including these four years, 11 months in the time rule's denominator was unreasonable because it diluted the community property share and therefore did not fairly account for the community's contributions. (*Bowen, supra*, 91 Cal.App.4th at p. 1297; *Lehman, supra*, 18 Cal.4th at p. 187.) As the Supreme Court explained in *Lehman*, when the time rule is used, the *result* must account for "the 'relative contributions of the community and separate estates.'" (*Lehman, supra*, 18 Cal.4th at p. 187.) Thus, we reverse the court's order and remand the matter with directions to recalculate the community and separate property interests in the PARB without the inclusion of Wayne's years of service after age 60 in the denominator.

Whether Laurie is correct the court should have excluded all of Wayne's years of service after he reached age 55 is a more difficult question to answer on this record. The 2014 stipulation tells us the difference between the PARB amount at age 55 and at age 60 is an actuarial difference and the PARB payable to an equity partner at age 55 is actuarially equivalent to the PARB payable at age 60. But multiple factors play into the determination of whether the inclusion or exclusion of the years of service between ages 55 and 60 is appropriate to reach a result that equitably apportions the community and separate property interests in the PARB. The trial court did not recognize it had the discretion to consider whether Wayne's service years between ages 55 and 60 should be in the time rule's denominator. Thus, the record is not fully developed as to whether the equitable result is to include these years of service in the time rule formula. As we have

14

concluded, the matter must be remanded for recalculation of the community and separate property interests in the PARB. Upon remand, the court can exercise its discretion and determine whether inclusion of Wayne's years of service between ages 55 and 60 is reasonable and accounts for the interests of the community and separate estates.

## DISPOSITION

The postjudgment order is reversed and the matter is remanded to the court with directions to recalculate the community and separate property interests in the PARB, in accordance with the views expressed in this opinion. Appellant, Laurie Jacobsen, shall recover her costs on appeal.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


DELANEY, J.


15