Filed 2/17/15  Marriage of Colman CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of ROBERT D. COLMAN and JANE S. COLMAN. | |
| ROBERT D. COLMAN,<br><br>        Appellant,<br><br>v.<br><br>JANE S. COLMAN,<br><br>        Respondent. | A138120<br><br>(Sonoma County<br>Super. Ct. No. SFL35835) |

Robert D. Colman (Husband) appeals a judgment awarding his former wife Jane S. Colman (Wife) certain community assets the trial court found had been omitted by the judgment of dissolution, ordering Husband to comply with the terms of the parties' marital settlement agreement (the MSA), denying his request to modify spousal support, requiring him to pay spousal support arrearages, and awarding Wife attorney fees and sanctions.  He contends the trial court abused its discretion in denying his request for modification of spousal support and erred in awarding Wife her attorney fees.  We shall affirm the judgment.

## I.  BACKGROUND

### A.  The Marital Settlement Agreement

Husband and Wife were married in 1970 and divorced in 2007.  As part of their divorce, the parties entered into the MSA agreeing to a division of their assets and

requiring Husband to pay Wife spousal support of $1,500 per month.  The September 2007 judgment of dissolution ordered spousal support and division of property in accordance with the terms of the MSA.  Among the MSA's terms, Husband would receive an apartment in New York City.

B.  The Motions

In June 2010, Wife filed an order to show cause (OSC) seeking enforcement of the judgment of dissolution, division of omitted assets (Fam. Code, § 2556)[1], and attorney fees and sanctions.  Wife alleged the parties entered into the MSA after they exchanged financial disclosures.  According to Wife, she later learned a number of facts:  that Husband had misrepresented the amount of his ownership stake in a company known as Olympic Precision, Inc. (OPI); that OPI owed Husband more than $100,000 in loans as of the date of separation; that Husband had not disclosed that OPI owed him more than $100,000 in salary earned during the marriage; that he had not disclosed certain financial institution accounts; and that during the marriage, Husband had bought a home in the name of a woman he later married.  Wife also alleged Husband had failed to pay some of his spousal support payments and medical insurance premiums for her and sought enforcement of other provisions of the MSA.

Husband brought a motion to modify spousal support on March 4, 2011, in which he also requested an award of attorney fees.  He asked the court to reduce his spousal support obligation to zero based on a material change in circumstance and to enforce the provision of the MSA requiring Wife to transfer ownership of the New York apartment to him.

According to Husband's supporting declaration, he was employed as president of OPI at the time of the 2007 spousal support order, but OPI had discontinued operations in 2010 as a result of his business partner's "fraudulent conduct and theft of intellectual property," which were the subject of a lawsuit in Vermont.  Husband stated he had no income from salary and wages, received $1,775 per month in unemployment benefits,

---

[1] All statutory references are to the Family Code.

2

and expected those benefits to run out in April 2011. His only other source of support was a family trust. Husband alleged his monthly expenses had increased significantly as a result of lawsuits Wife had filed against him in New York and California. The New York action had been brought by Wife and the couple's son; the action had been dismissed as to Wife, but the son's claims were still pending. The second alleged lawsuit was the OSC Wife had filed in June 2010, with a scheduled trial date of June 2011. Husband stated that his average monthly expenses, not including legal fees, were $11,400 per month; including the legal fees, his expenses were $42,000 per month.

Husband stated in his declaration that he was the primary beneficiary of a trust established by his parents (the trust), and that he could use the trust corpus and income only for his health, education, support, and maintenance. In 2010, he received approximately $78,500 (or an average of $6,542 per month) from the trust for his living expenses, and the trust had lent him an additional $448,000 since 2009 to allow him to make loans to OPI to sustain its operations, wind down the business, and pay legal fees associated with the Vermont litigation against OPI and the New York litigation with Wife and son. Husband also stated that Wife's financial situation had improved since the divorce and she had a decreased need for spousal support, and that Wife had failed to execute documents to transfer her ownership interest in the New York apartment to Husband in accordance with the MSA.

C. Testimony at the Hearing on the Motions

A hearing took place on a number of dates between November 2011 and March 2012. Although Husband has provided us with only a partial transcript of those proceedings, it appears the court considered both Wife's and Husband's motions at the hearing.[2]

---

[2] The entirety of the testimony at the first two days of the hearing is omitted from the reporter's transcript on appeal, as is the transcript of the day on which the parties presented their closing arguments to the court. The reporter's transcript is limited to the final portion of Wife's testimony on direct examination and her cross-examination, and several days of Husband's testimony, as well as counsel's colloquies with the court on those days.

At trial, Husband testified that his salary at OPI was discontinued in March 2010 because the company no longer had any revenue, although it had a contract with the Department of Defense that had to be completed by June 2010. Husband had been looking for a job, and at that time was negotiating with a potential employer. Since 2010, he testified, he had depleted his investment account and retirement account, and had borrowed money and received bequests of approximately $600,000 from his parents' trusts. He had borrowed nearly $100,000 from his current wife between 2010 and the time of trial; he felt an obligation to repay this money, but had not signed a promissory note. He had also received unemployment benefits.

Husband testified he was involved in litigation in three matters: one in Vermont, one in New York, and one in California, and was spending about $30,000 per month on legal expenses. Defendant was the plaintiff in the Vermont litigation regarding OPI, which was filed in 2009, but was also the subject of counterclaims. When asked how he could continue paying his legal fees, he testified he had "a few dollars" left in the family trust, and then he would need to borrow money from his current wife. Husband testified he believed that in establishing the trust, his parents intended him to use it only for his own maintenance and that it would be impermissible for him to use it to pay spousal support to Wife.[3]

As trustee, Husband began invading the corpus of the trust in 2006, while he was still married to Wife. He arranged for the trust to lend $249,000 to assist his current wife's family in purchasing a residence in Massachusetts for her. Husband testified he believed he had discretion as trustee to make the loan. He and his current wife lived in the house after his divorce from Wife. The residence had been sold by the time of trial,

---

[3] The trust itself provided for a further trust for Husband after the death of his parents, under which the trustees "shall pay out of the income or principal, or both, such amount or amounts (whether equal or unequal and whether whole or a lesser amount) as the Trustees may determine to such one or more persons as the Trustees may select out of a class composed of ROBERT COLMAN and his issue from time to time living, so as to adequately provide for their health, education, support and maintenance, without any duty to inquire into such beneficiary's other means of support." Husband was the trustee.

and Husband was living in a two-family home with his current wife and their son, with a tenant in the other unit.

Wife testified that at the time of the hearing, she owed nothing on her residence in New York, and her monthly expenses were $4,223.

D. The Trial Court's Ruling

The trial court first ruled on Wife's claims. The court found that the deferred salary owed to Husband by OPI at the time of the dissolution was an omitted asset under section 2556, that Husband knew he was owed the salary, and that he intentionally failed to disclose it in order to hide the asset from Wife. The court awarded the entire amount to Wife and stated that Husband's intentional omission would be a factor in its decision on some of the other issues in the case. The court found that the loans to OPI were not an omitted asset because they were fairly included in the language of the MSA. As to the ownership of OPI, the court found that only a portion of the value of Husband's interest in the business had been adjudicated at the time of the dissolution. The court found that although Husband had claimed to own only 42 percent of the corporation, his actual ownership share was 86 percent. The court found that Husband's testimony on this issue lacked credibility and awarded the value of the unadjudicated portion of the corporation to Wife. The court also awarded Wife certain assets in accordance with the MSA.

The court then denied Husband's request for modification of his spousal support. In its statement of decision, the court stated, "The court does not believe that Mr. Colman has met his threshold showing of a change in circumstances that warrant modification of spousal support. It is the Court's opinion that Husband has seriously manipulated his assets to create a fiction of financial distress, such as making loans to family members and in-laws to purchase what amounts to his current residence, manipulating trust assets to pay for litigation over an apparently defunct corporation's assets over which Mr. Colman has complete and utter control. [¶] Even if some change could be assumed, I am not bound to change or modify the support. And I refer the parties to *In re Marriage of Poppe* (1979) 97 Cal.App.3d 1, pages 10 though 11. The Court can use its discretion to deny a support reduction when the financial situation is within the obligor's control.

5

[¶] And I would refer the parties to *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1638 to 1639. Given that there is no material change as a threshold, I do not feel it's necessary for this Court to conduct further analysis under Family Code section 4320."[4] The court also awarded spousal support arrearages and ordered that Husband's spousal support obligations be secured by his interest in the New York apartment.

Finally, the court awarded Wife $125,000 in attorney fees and sanctions, based in part on Husband's failure to make a forthright disclosure of his assets.

## II. DISCUSSION

At the outset, we note that Husband has provided only limited citations to the record on appeal to support his contentions. We shall disregard factual assertions in his briefs that are unsupported by citations to the evidence before the court. (See *Liberty National Enterprises, L.P. v. Chicago Title Insurance Co.* (2011) 194 Cal.App.4th 839, 846; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 (*Del Real*) [appellate court need not search record on its own seeking error].)

### A. Modification of Spousal Support

Husband contends that the trial court abused its discretion in denying his request for modification of his spousal support obligation. In particular, Husband argues the trial court's findings that he had control of OPI's assets and that there was no material change in his circumstances are not supported by substantial evidence. We review the trial court's order for abuse of discretion. (*In re Marriage of Rising* (1999) 76 Cal.App.4th 472, 478, fn. 9.) "Whether a modification of a spousal support order is warranted

---

[4] In the cited portion of *In re Marriage of Poppe*, the court noted that although a modification of spousal support cannot be granted absent proof of a change in circumstances, "a showing of changed circumstances does not necessarily mandate a modification of spousal support." (97 Cal.App.3d at p. 10.) The court went on to rule there was no showing that the trial court had abused its discretion in requiring the former husband to continue to pay spousal support where his income exceeded his expenses and the former wife's modest expenses exceeded her income. (*Id*. at pp. 10-11.) In *In re Marriage of Ilas*, the Court of Appeal applied the rule that where a former spouse was able but unwilling to work, the court could apply the "earning capacity" standard to a spousal support determination. (12 Cal.App.4th at pp. 1638-1639.)

6

depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown. [Citations.] Where statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 357-358.)

We begin with the fundamental rules governing the appellant's obligation and our review on appeal. "On appeal, we must presume that the trial court's judgment is correct. [Citation.] In service of that rule, we adopt all intendments and inferences to affirm the judgment or order unless the record expressly contradicts them. [Citation.] [¶] It is the burden of the party challenging the judgment on appeal to provide an adequate record to assess error. [Citation.] Thus, an appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited. [Citation.]" (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 (*Nielsen*); see also *Del Real*, *supra*, 95 Cal.App.4th at p. 768 "[any point raised that lacks citation may, in this court's discretion, be deemed waived"].)

Husband's briefs contain only minimal citations to the record on appeal and are replete with assertions of fact unsupported by reference to the record. We are not required to comb through the record to find support for Husband's assertions. (*Del Real*, *supra*, 95 Cal.App.4th at p. 768.) Moreover, in the absence of a complete record of the testimony below, we cannot properly evaluate Husband's contention that the record does not contain evidence to support the trial court's factual findings. (See *People v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.)

In any case, even based on the evidence upon which Husband relies, we are not convinced that the trial court's findings are unsupported or that the trial court abused its discretion. We bear in mind that we must adopt all inferences to support the judgment. (*Nielsen*, *supra*, 178 Cal.App.4th at p. 324.) Based on the evidence before it, the court

7

could reasonably infer Husband had "manipulated" his assets in a way that depleted first the property held in his own name while retaining the trust's assets, thus creating an appearance of greater financial distress than he actually suffered and that he had controlled the decision to initiate the Vermont litigation and assume responsibility for the costs of that litigation. Based on the fact that Husband used his family trust funds—during his marriage to Wife—to help his current wife's family purchase a residence for her, the court could also conclude Husband had more flexibility in the use (or "manipulat[ion]") of his assets than he claimed at trial. In addition, as the court noted, the MSA had anticipated that even when Wife was employed, she would continue to need financial assistance from Husband.

Moreover, as noted in a case relied upon by the trial court, "former husband's premise that a change of circumstances was shown does not support his conclusion that a modification or termination of spousal support was thereby required. A modification of spousal support cannot be granted in the absence of proof of a change in circumstances. However, the converse is not true; a showing of changed circumstances does not necessarily mandate a modification of spousal support." (*In re Marriage of Poppe*, *supra*, 97 Cal.App.3d at p. 10; accord *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484.) In the circumstances of this case, Husband has not persuaded us the trial court abused its discretion in denying his request to modify his spousal support obligation.

B. Attorney Fees

The trial court awarded Wife $125,000 in attorney fees. Seventy-five thousand dollars of those fees was intended to reimburse Wife for legal expenses she had been forced to pay using money she needed for her support and maintenance, and $50,000 was ordered as a sanction. Husband contends this award was improper because Wife did not give him notice of her intention to seek attorney fees.

The MSA provided: "In any action or proceeding to enforce any provision of this agreement, or any corresponding provision of a subsequent judgment into which the provision is incorporated, the prevailing party will be awarded reasonable attorneys' fees

8

and costs. For the moving party to be deemed the prevailing party for purposes of this provision, at least ten (10) days before the filing of any motion he or she must provide written notice to the other party specifying the alleged breach or default, if capable of being cured. The other party must then be allowed to avoid implementation of this provision by curing the breach or default specified during the ten[-]day period." Husband contends it is "undisputed" that Wife did not provide notice to him before filing her OSC seeking enforcement of the MSA and division of omitted assets.

We reject this contention. First, under California Rules of Court, rule 8.130(a)(2), if an appellant's notice designating a reporter's transcript "designates less than all the testimony, the notice must state the points to be raised on appeal; the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise." Husband did not designate the issue of attorney fees as one of the points to be raised on appeal, and accordingly it is not properly before this court. (See *Aspen Grove Condominium Assn. v. CNL Income Northstar LLC* (2014) 231 Cal.App.4th 53, 60 & fn. 2; *McDaniel v. Dowell* (1962) 210 Cal.App.2d 26, 30.)

In any case, even if we considered the contention on the merits, we would reject it. Husband points to no factual support in the record for his contention that Wife did not provide notice before filing her OSC and has therefore waived it. (See *Del Real*, *supra*, 95 Cal.App.4th at p. 768.)

Moreover, Husband ignores the fact that the attorney fees award was made not only in connection with Wife's OSC, but also with his *own* motion to modify his spousal support obligation, in which he sought attorney fees. Pursuant to section 271, a trial court may award attorney fees and costs based on the extent to which the conduct of the parties furthers or frustrates the policies of promoting settlement and cooperation. As explained in *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1100, this statute " 'advances the policy of the law "to promote settlement and to encourage cooperation which will reduce the cost of litigation." [Citation.] Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition

of attorneys' fees and costs as a sanction. [Citations.]' [Citation.]" Husband has not persuaded us that the attorney fees award was improper.

C. Matters Raised in Respondent's Brief

In her respondent's brief, Wife asks us to dismiss the appeal under the doctrine of "disentitlement" because Husband has willfully disobeyed trial court orders. We have already denied Wife's motion to dismiss the appeal on this ground.

Wife also suggests we should impose sanctions on Husband for filing a frivolous appeal. The request does not comply with California Rules of Court, rule 8.276, which requires a motion with a supporting declaration. The request is denied. (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919; *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 807.)

## III. DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.

10